OPINION OF THE COURT
Theodore Diamond, J.
A trial de novo for breach of a sales contract was held on December 13, 1982. The previous arbitration had been decided in favor of plaintiff for $2,580 plus interest from January 1, 1982. The parties stipulated that if plaintiff prevails after trial, there would be a subsequent traverse on the issue of jurisdiction.
UNCONTROVERTED FACTS
Defendant buyer ordered the goods in question on August 7, 1981 after earlier conversations with plaintiff seller. It was clear that buyer wanted a relatively “soft” pad. The agreed purchase price was $2,580 for 500 dozen units (43 cents per unit). The goods were delivered on November 19, 1981. They were not paid for. Demand for payment was made in a timely manner. Buyer still has the goods.
*306 FINDINGS OF FACT
Both parties knew there would be a question about exactly how soft the pads would be, when delivered.
Buyer had two samples (Nos. 221 and 222). His order indicated that he wanted a pad “as soft as possible — like the sample no. 222”.
Both buyer and seller could have waited for an exact sample before ordering, or confirming the order. Neither did so. Buyer’s order asked for delivery “as soon as possible”.
The Nos. 221 and 222 samples were not in evidence, but the delivered pads were harder than what buyer really wanted.
Buyer did not inspect the goods in a timely manner, especially since he was aware that there was a question about how “soft” the pads would be at the time he ordered them, and during earlier discussions.
Buyer did not advise seller of his disapproval of merchandise until April, 1982 — and only then after seller contacted him at that time about payment.
Buyer desired the imported pads from Taiwan because they would be less expensive than comparable pads manufactured in the United States.
CONCLUSIONS OF LAW
The remedies available to a seller for the breach of a sales contract, by a buyer, are provided in section 2-703 of the Uniform Commercial Code. In the present case, the seller has brought an action for the price pursuant to section 2-709 of the Uniform Commercial Code. The contract price may be recovered by seller when buyer accepts the goods. (Uniform Commercial Code, § 2-709, subd [1], par [a].) Acceptance occurred when buyer failed to make an effective rejection (Uniform Commercial Code, § 2-602, subd [1]) after having had a reasonable opportunity to inspect the goods. (Uniform Commercial Code, § 1-606, subd [1], par [b].) Comment 1 to this section states, “Under this Article ‘acceptance’ as applied to goods means that the buyer * * * takes particular goods which have been appropriated to the contract as his own, whether or not he is *307 obligated to do so, and whether he does so by words, action, or silence when it is time to speak.” The goods were delivered to buyer in November, 1981 and it was not until April, 1982, when seller contacted buyer about payment, did buyer first complain about the nonconformity of the rubber pads. Buyer had a reasonable opportunity to inspect and reject the goods. It was his silence for five months that constituted the acceptance.
“The. buyer must pay at the contract rate for any goods accepted.” (Uniform Commercial Code, § 2-607, subd [1].) However, to offset this amount, a buyer who has accepted goods may still have a counterclaim for nonconformity and sue for breach of warranty damages under section 2-714 of the Uniform Commercial Code as well as any incidental and consequential damages under section 2-715 of the Uniform Commercial Code. In the case at bar no counterclaims were alleged.
The acceptance of goods precludes their subsequent rejection. (Uniform Commercial Code, § 2-607, subd [2].) Once accepted, return of the goods can only be made by way of revocation of acceptance. (Uniform Commercial Code, § 2-608.) “Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it * * * It is not effective until the buyer notifies the seller of it.” (Uniform Commercial Code, § 2-608, subd [2].) Although this assertion was not made by defendant, he failed to act within a reasonable time to revoke acceptance of the goods.
At trial defendant raised an affirmative defense of breach of warranty. Plaintiff’s argument that defendant should be precluded from asserting this defense because of unfair surprise (CPLR 3018, subd [b]), is not persuasive. It is the nature of this type of business that puts a seller on notice that in any sales transaction, a buyer might claim that the goods are nonconforming. In addition, defendant testified that in April, 1982 he advised seller of his disapproval of the merchandise. Defendant’s motion to amend his answer is granted.
Defendant’s attempt to establish the existence of an express warranty based on his selecting from two rubber pads sent to him by seller fails. (Uniform Commercial *308 Code, § 2-313, subd [1], par [c].) Comment 6 draws a distinction between “a ‘sample’ actually drawn from the bulk of goods which is the subject matter of the sale, and a ‘model’, which is offered for inspection when the subject matter is not at hand and which has not been drawn from the bulk of the goods.” The circumstances here are of the latter. Buyer’s order, on his own stationery, indicated that he wanted a pad “as soft as possible — like the sample no. 222.” It is clear that buyer knew pad No. 222 was not from existing bulk, but rather an illustration. “In general, the presumption is that any sample or model * * * is intended to become a basis of the bargain * * * But in mercantile experience the mere exhibition of a ‘sample’ does not of itself show whether it is merely intended to ‘suggest’ or to ‘be’ the character of the subject-matter of the contract * * * If * * * a model of merchandise not on hand is offered, the mercantile presumption that it has become a literal description of the subject matter is not so strong” (Uniform Commercial Code, § 2-313, Comment 6). Therefore, no express warranty was made by seller concerning the characteristics of the rubber pad.
Section 2-314 of the Uniform Commercial Code, implied warranty of merchantability, does not apply to these facts either. This warranty is implied only “if the seller is a merchant with respect to goods of that kind.” Seller is an importer. He is not in the rubber pad business nor was there any evidence that he held himself out as having knowledge or skill peculiar to these goods. (Uniform Commercial Code, § 2-104.) There was no proof that plaintiff made any statements or guarantees giving rise to an express warranty of merchantability. Furthermore, the evidence was insufficient to conclude that the pads buyer received are not “fit for the ordinary purposes for which such goods are used”. (Uniform Commercial Code, § 2-314, subd [2], par [c].)
Finally, defendant cannot rely on section 2-315 of the Uniform Commercial Code, implied warranty of fitness for a particular purpose. There was no “particular purpose”, as distinguished from ordinary purpose, for which the goods were to be used. These rubber pads were to be sold by buyer as a drill attachment to secure sandpaper or a polishing *309 bonnet, which is their intended function. In addition, buyer was not “relying on the seller’s skill or judgment to select or furnish suitable goods”. (Uniform Commercial Code, § 2-315.)
JUDGMENT
Judgment for plaintiff seller in the amount of $2,580 plus interest from January 1, 1982, plus costs.
The issue as to the service of the summons and complaint is ordered placed on the calendar of Special Term, Part II, of this court for traverse on Monday, January 31, 1983, at 11:00 a.m. at 141 Livingston Street, Brooklyn, New York, Room No. 501.