**In re FRAN CHAR PRESS, INC., Debtor.**

**Bankruptcy No. 883–30481–20.**

United States Bankruptcy Court,
E.D. New York,
Westbury Division.

July 22, 1985.

Abel Jack Schwartz, Schwartz, Sachs & Kamhi, Carle Place, N.Y., for debtor.

Bruce Weiner, Weiner & Silverman, New York City, for creditor M & H Creative Services.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

This matter came to be heard on the motion of the debtor in this chapter 11 proceeding for an order expunging or reducing a $30,000 claim against the debtor's estate made by M & H Services, Inc. ("M & H"). The disputed claim relates to a contract between the debtor and M & H for the production of printed posters. Upon consideration of the parties' memoranda and the evidence adduced at hearings held on March 14, 1985 and April 11, 1985, the court hereby denies debtor's motion.

## STATEMENT OF FACTS

Most of the facts are undisputed. On November 12, 1982, M & H placed an order with the debtor for the printing of 100,000 posters at a cost of $7,017, to be completed by November 19, 1982. Payment was to be made within thirty days of billing. M & H ordered the posters for an advertising campaign to introduce "Satin" cigarettes. One half of the posters was to be delivered to Consolidated Mounting for mounting on cardboard. The other half of the posters was to be delivered to B.J. Paper Company to be bound into large pads. Prior to printing, the debtor prepared a sample poster which M & H approved.

Debtor refused to make delivery until it received full payment by certified check. On or about November 21, 1982, M & H gave debtor such a check and delivery was made.

On or about November 23, 1982, when Consolidated Mounting was mounting the posters, M & H discovered that approximately one half of the posters were blemished and unfit for display. In order to complete the mounting, M & H retrieved the posters that were delivered to B.J. Paper Company, and shipped those posters to Consolidated Mounting. Consolidated Mounting completed production, but roughly one half of all the posters produced by the debtor had to be discarded, and additional mounting was required for which M & H paid Consolidated $10,500. M & H needed to replace the discarded posters within days to meet the advertising campaign deadlines and they hired a new printer at a cost of $20,090. M & H has filed a claim for $30,000 against debtor's bankruptcy estate.

Debtor does not dispute the reasonableness of the cost of the new printing and mounting, but debtor questions the need to incur the additional expense. Debtor claims that M & H telephoned upon discovering the defects and that debtor stated its willingness and readiness to remove the blemishes. In contradiction, M & H claims that during the subject telephone conversation, debtor denied the existence of a problem and hung up the telephone. The court finds (1) that the debtor did not volunteer to correct the problem, and (2) that debtor's proposed remedy would have been ineffective if it had.

In the first instance, debtor's testimony lacks credibility. Debtor contracted to allow M & H to pay its bill within 30 days of billing, but debtor reneged on the contract and demanded full payment before it would release the goods purchased. The debtor lied to M & H when it said that M & H could pay within thirty days and therefore the court doubts the credibility of debtor's statement that it offered to help M & H.[1] On the other hand, M & H's claim that debtor denied any help is credible in light of M & H's subsequent payment of over $30,000 to replace posters that had already been paid for. Surely, M & H would have seized any chance to avoid the inconvenience and cost of printing 50,000 replacement posters.

---

**1.** Given the debtor's dishonesty in dealing with M & H, the court would not have held M & H responsible for failing to contact the debtor at all about the problem. M & H was under time constraints and it would have been prudent for M & H to insure that they not be subject to unfair advantage on account of their desperate circumstances.

Second, expert testimony established that the blemishes were created by a malfunctioning machine that physically blew ink off the posters. Accordingly, the only way to cover the blemishes would have been with touch-up ink. Debtor testified that it contemplated spraying a transparent coating on the damaged posters. Clearly, transparent finish could not hide the absence of ink.

## DISCUSSION

■ This transaction is governed by Article 2 of the Uniform Commercial Code. M & H and the debtor made a written contract for the sale of goods, the terms of which are recited in the findings of fact, *supra*. M & H accepted the finished goods, but revoked its acceptance of about half of the goods upon discovery of material defects. M & H secured cover to replace the defective goods and is entitled to the cost of the cover and incidental expenses as damages.

### Acceptance of goods

■ Acceptance of goods occurs in any of the following circumstances: (a) when the buyer accepts goods and signifies to the seller that the goods conform to the contract; (b) when the buyer accepts goods and fails to make an effective rejection; and (c) when the buyer accepts goods and does any act inconsistent with the sellers ownership. 62½ N.Y. Cons.Laws § 2–606 (McKinney's 1975). In this case M & H took possession of the posters and mounted them on cardboard. Taking possession and mounting the posters constituted an act inconsistent with the debtor's ownership and therefore M & H accepted the goods as a matter of law.

### Revocation of acceptance

■ A buyer may revoke his acceptance when goods contain a non-conformity that was not discovered at the time of acceptance, if his acceptance was induced by either the debtor's assurances, or by the difficulty of discovery of the defects. Revocation of acceptance must occur within a reasonable time, and an effective revocation of acceptance entitles a buyer to an array of statutory remedies. *Id.* § 2–608.

■ In this case, the rejected posters did not conform to the contract because they were blemished. M & H did not discover the non-conformity until after mounting had commenced because debtor made late delivery of the posters; and because M & H relied on debtor's assurances that the posters would conform to the sample poster. M & H contacted the debtor promptly upon discovery of the non-conformity. Accordingly, M & H rightfully revoked its acceptance of the posters because they did not conform to the sample. Therefore, M & H is entitled to remedies to cure the debtor's breach of contract.

### Cover

Buyer's remedies for seller's breach under the U.C.C. include incidental damages, consequential damages, lost profits, recovery of payment, cancellation of contract, cover, specific performance, and replacement. *Id.* § 2–711. In this case, M & H produced evidence of having effected cover and of paying incidental expenses.

■ Generally, a buyer "covers" by making a timely good faith purchase of goods in substitution for those due from the seller. *Id.* § 2–712. The buyer may then recover from the seller as damages, the cost of cover together with any incidental and consequential damages, but less expenses saved in consequence of the seller's breach. *Id.* § 2–712(2).

In this case, M & H made a prompt purchase of additional paper and printing services at a price that was reasonable under the circumstances. Therefore, M & H is entitled to damages for cover in the amount of $20,090.

### Incidental damages

■ Incidental damages resulting from a sellers breach involving nonconformity of goods include reasonable expenses incurred effecting cover. *Id.* § 2–715(1). Such expenses include for example, inspection costs, transportation costs, the cost of care

and custody of rejected goods, and other reasonable expenses incident to the breach. *Id.* In this case, M & H has made no claim for any incidental expenses except the additional charge made by Consolidated Mounting for the mounting of additional posters. The cost of mounting is properly incidental to the breach and therefore allowed as an expense in connection with effecting cover.

 The total expenditure made by M & H in securing cover includes (but does not appear to be limited to) $20,090 for printing, and $10,500 for mounting. These two expenses alone exceed the amount of $30,000 listed on M & H's proof of claim. The court therefore denies the debtor's motion to reduce or expunge the claim of M & H.

So Ordered.