Ted SOBIECH, d/b/a Ted Sobiech
Farms, Plaintiff–Counter–Claim
Defendant–Appellee,

v.

INTERNATIONAL STAPLE AND MA-
CHINE CO., INC., Defendant–Counter–
Claim Plaintiff–Appellant.

No. 477, Docket 88–7682.

United States Court of Appeals,
Second Circuit.

Argued Nov. 29, 1988.

Decided Feb. 10, 1989.

John M. Sylvester, Kirkpatrick & Lock-
hart, Pittsburgh, Pa., for defendant-coun-
ter-claim plaintiff-appellant.

Michael R. Gottlieb, Middletown, N.Y.,
for plaintiff-counter-claim defendant-appel-
lee.

Before VAN GRAAFEILAND,
WINTER and MAHONEY, Circuit
Judges.

WINTER, Circuit Judge:

This is an appeal by the defendant, Inter-
national Staple and Machine Co., Inc.
("ISM"), from a decision awarding the
plaintiff, Ted Sobiech, d/b/a Ted Sobiech
Farms, damages for breach of implied war-
ranties with regard to certain machines
ISM sold to the plaintiff. Because we con-
clude that no warranties existed, we re-
verse that damage award. The district

court also held that ISM was not entitled to the contract price. Because Sobiech had purchased the machines, used them in his business for over three years and never sought to return them, we conclude that Sobiech did not revoke his acceptance of the equipment and is liable for the remainder of the purchase price with prejudgment interest.

## BACKGROUND

Sobiech was engaged in the business of growing, packaging, and shipping vegetables, including onions, at a farm in Pine Island, New York. ISM located in Pennsylvania, is a distributor of vegetable packaging equipment and materials. Prior to 1981, ISM had supplied Sobiech with machines and equipment for the packaging of onions. Among these machines were several "weigh packers" that weighed onions on a mechanical scale and automatically packaged them. At a trade convention, Ted Sobiech learned that electronic scales that weighed onions more accurately had come on the market. Sobiech thereupon inquired of ISM whether it could provide electronic weighing scales to replace the mechanical scales Sobiech had been using in his weigh packers. After discussions with its foreign supplier, ISM informed Sobiech that such a conversion on the weigh packers was possible, although ISM did not know whether a conversion had ever been attached to the type of weigh packers used by Sobiech.

Sobiech decided to go ahead with the conversion. In January 1982, he had the mechanical scales on one of his four weigh packers outfitted with an electronic scale on a trial basis so that he could evaluate the performance of the conversion machine before deciding whether to purchase it. At that time, ISM informed Sobiech that the machine was new and experimental. Sobiech experienced numerous problems with the conversion machine but nevertheless decided to buy from ISM a new MS–902 weigh packer with electronic scales identical to the conversion machine. In an offer letter, ISM priced the new weigh packer at $53,000, with thirty percent required as a down payment. ISM's offer included a four-month repair warranty and a disclaimer of any and all express or implied warranties of merchantability or fitness for a particular purpose.

Without signing the offer letter, Sobiech agreed in April 1982 to purchase the new weigh packer and, during the summer of 1982, made a down payment of $15,900. ISM thereupon installed the weigh packer at Sobiech Farms. At about the same time, Sobiech also decided to buy the conversion machine. Sobiech made no further payments on the weigh packer, leaving $37,100 unpaid on that machine, and never paid any of the agreed-upon $17,000 contract price for the conversion machine.

Sobiech was well aware of difficulties with the conversion machine before deciding to purchase it and the new weigh packer. His own evidence indicated that ISM had found it necessary to service the conversion machine numerous times, particularly because of the adverse effects of "load cell" deterioration. The difficulties Sobiech subsequently experienced in operating the new weigh packer were the same as had occurred during the trial period use of the conversion machine, primarily concerning failures of the load cells to perform properly their weighing functions. ISM representatives worked with some success to correct these problems, and Sobiech admitted at trial that over ninety percent of the bags of onions generated by the machines were within an acceptable weight range.

Despite these problems, Sobiech used both the new weigh packer and the conversion machine in his business for at least three years. During those years, ISM honored its repair warranty, which it had extended by letter, including the performance of routine maintenance. In response to Sobiech's complaints, ISM offered to take back the machines and sell him another model at cost as a replacement. Sobiech rejected this offer. Despite the availability of similar machines from ISM's competitors and sufficient financial resources to purchase other machines, Sobiech continued to use the ISM machines. It is also undisput-

ed that he never requested that ISM take back the machines.

In August 1985, Sobiech filed this action against ISM in state court in New York, alleging that the two onion-packing machines had not performed as warranted. ISM removed the action to United States District Court for the Southern District of New York. Meanwhile, ISM had sued Sobiech in the United States District Court for the Western District of Pennsylvania, alleging that it was entitled to the unpaid contract price for the two machines. This action was thereafter transferred to the Southern District of New York, and we shall treat it as a counterclaim in the original action in the Southern District.

After a trial, the district court awarded judgment in favor of Sobiech in the amount of $50,848, plus interest. It concluded that there were no express warranties concerning the weigh packer or the conversion machine, but that the effort to exclude implied warranties was not "conspicuous" as required by U.C.C. §§ 2–316(2), 1–201(10). The district court found that implied warranties of merchantability and fitness for a particular purpose had been breached and awarded Sobiech $55,970 in damages, to be reduced by $5,122 for other equipment for which Sobiech never paid ISM, for a total of $50,848, plus interest. The district court did not award ISM the unpaid purchase price for the weigh packer or conversion machine. In a Second Amended Judgment, however, it granted ISM the right to repossess the machines, the amendment holding by implication that Sobiech had revoked his acceptance of the machines.

1. Section 2–608 reads:
§ 2–608. *Revocation of Acceptance in Whole or in Part*
(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs *its* value to him if he has accepted it
(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

## DISCUSSION

We believe ISM is entitled to the unpaid purchase price for the weigh packer and conversion machine. Sobiech accepted the goods, used them for three years and did nothing to revoke that acceptance until he brought the present action. Further, we do not agree that any implied warranties existed. Sobiech had actual knowledge, based on extensive personal experience, of the machines' defects at the time he purchased them, thus negating the existence of any implied warranty.

### 1. *The Validity of Sobiech's Revocation of Acceptance*

The parties do not dispute that New York law governs the sales contracts in the instant case. The relevant statutory provision is New York Uniform Commercial Code Section 2–608, which we set out in the margin.[1] Given the district court's failure to award ISM the unpaid purchase price for the weigh packer and conversion machine and its conclusion that ISM had the right to repossess the machines, it impliedly held (although it inconsistently did not order ISM to return the down payment) that Sobiech had validly effected a revocation of his acceptance of the machines. We disagree.

The critical facts as found by the district court are that Sobiech "decided to continue using the two machines," for a period of over three years and never made any attempt to return them, even to the point of rejecting ISM's offer to replace them. "The continued use of goods is inconsistent with the seller's ownership and may be

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
N.Y.U.C.C. § 2–608 (McKinney 1964).

found to constitute an acceptance" under U.C.C. § 2–606(1). *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 75 (2d Cir.1986). Such an acceptance under N.Y.U.C.C. § 2–606(1)[2] occurred here. *See Kesco Textile Co. v. Coit Int'l, Inc.*, 41 A.D.2d 828, 343 N.Y.S.2d 1, 3 (1973), *aff'd*, 34 N.Y.2d 700, 356 N.Y.S.2d 616, 313 N.E. 2d 74 (1974); *In re Fran Char Press*, 55 B.R. 55, 57 (Bkrtcy.E.D.N.Y.1985) (buyer "accepted" posters where buyer took possession of posters and mounted them on cardboard); *Syntex Corp.*, 786 F.2d at 75; *Economy Forms Corp. v. Kandy, Inc.*, 391 F.Supp. 944, 950 (N.D.Ga.1974), *aff'd* 511 F.2d 1400 (5th Cir.1975).

■ Sobiech agreed to purchase the machines, exercised control over them for more than three years, obtained benefits from their use, and never even asked ISM to take them back. These acts are clearly "inconsistent with the seller's ownership." Sobiech concedes these facts but argued that his bringing of the present lawsuit was a valid revocation of acceptance. Under N.Y.U.C.C. § 2–608(2), however, revocation of acceptance must be "within a reasonable time after the buyer discovers ... the ground for it," and notice must be given to the seller. Sobiech clearly did not comply with those requirements. In *Syntex Corp.*, for example, a similar case involving use of equipment for some twenty-two months after a purported revocation, we held that "such [continued] use would be at odds with a revocation of acceptance...." *Id.* at 75. Sobiech's use of the machines for more than three years "was far longer than was reasonably necessary to acquire" other machines, a factor considered by us in *Syntex Corp. Id. See also Import Traders, Inc. v. Frederick Mfg. Corp.*, 117 Misc.2d 305, 457 N.Y.S.2d 742, 743–44 (N.Y. Civ.Ct.1983) (five months constitutes unreasonably long time for revocation of acceptance).

■ Because Sobiech accepted the machines, he is liable to ISM for the remainder of the purchase price on the weigh packer, $37,100, and for the purchase price of the conversion machine, $17,000. N.Y. U.C.C. § 2–607(1) (McKinney 1964). ISM is also entitled to prejudgment interest on this amount as incidental damages under N.Y.U.C.C. § 2–709(1).[3] The purpose of these incidental damages is to put the aggrieved party in as good a position as had the other party performed. These damages include an award of statutory prejudgment interest when a buyer fails to pay the contract price. N.Y.C.P.L.R. § 5001(a) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract ..."); *Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co.*, 697 F.2d 481, 485–86 (2d Cir.1983) (seller entitled to statutory interest on unpaid portion of contract price to compensate for loss of use of money). ISM is therefore entitled to recover prejudgment interest on the unpaid contract price. *See Newburger, Loeb & Co. v. Gross*, 611 F.2d 423, 433–34 (2d Cir.1979) (appellate court can grant prejudgment interest for first time). We remand for a calculation of this interest.

2. Section 2–606(1) reads:
   § 2–606. *What Constitutes Acceptance of Goods*
   (1) Acceptance of goods occurs when the buyer
   (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
   (b) fails to make an effective rejection (subsection (1) of Section 2–602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
   (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

N.Y.U.C.C. § 2–606(1) (McKinney 1964).

3. Section 2–709(1) reads:
   § 2–709. *Action for the Price*
   (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price
   (a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and
   (b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

N.Y.U.C.C. § 2–709(1) (McKinney 1964).

## 2. *Breach of Warranty Claim*

The district court awarded Sobiech damages for breach of implied warranties of merchantability and fitness. It reasoned that the disclaimer of any and all express or implied warranties of merchantability or fitness for a particular purpose was not "conspicuous," as required by N.Y.U.C.C. § 2–316(2)[4] and defined in N.Y.U.C.C. § 1–201(10),[5] because "[t]here was no exclusion in capital, or larger, letters" and defendant should have known that plaintiff is a man of limited formal education. Because such warranties had not been effectively excluded, the district court found them to exist.

The existence of such implied warranties is a mixed question of law and fact, involving the interpretation of contract terms, which we may review independently. *Eutectic Corp. v. Metco, Inc.*, 579 F.2d 1, 5 (2d Cir.) (when decision of court below rests upon incorrect reading of undisputed document, appellate court is free to substitute its own reading of document), *cert. denied*, 439 U.S. 867, 99 S.Ct. 192, 58 L.Ed.2d 177 (1978); *see Schuneman v. United States*, 783 F.2d 694, 699 (7th Cir.1986); *cf. Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986) (contract interpretation is question of law subject to full appellate review).

The district court found the implied warranties to exist by implication from the failure to exclude them in a sufficiently conspicuous manner, and to have been extended by ISM's response to a letter from Sobiech's counsel in which ISM agreed to extend, as described by plaintiff's counsel, *"the warranty which ha[d] been given."* This language referred only to the limited four-month repair warranty that ISM had earlier extended, however. Plaintiff's counsel's letter thus discussed the operational problems with the machines and asked ISM to make "whatever repairs may be necessary." Moreover, ISM certainly could not have intended, nor could Sobiech or his counsel have reasonably believed that ISM intended, to extend warranties which it had expressly excluded, albeit not in a sufficiently conspicuous manner for purposes of the Code, and which were implied only *ex post* as a matter of law by the district court.

In any event, we believe that the existence of implied warranties is excluded as a matter of law. N.Y.U.C.C. § 2–316(3)(b)[6] states that when a purchaser has fully examined goods prior to purchasing, there is no implied warranty with regard to defects that an examination ought to have revealed to the purchaser.[7] The district court found that Sobiech was aware of the experimental nature of, and potential problems with, the machines at

---

**4.** Section 2–316(2) reads:

§ 2–316. *Exclusion or Modification of Warranties*

\* \* \* \* \* \*

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof." N.Y.U.C.C. § 2–316(2) (McKinney 1964). *See Also* N.Y.U.C.C. § 2–316(3)(b) (McKinney 1964):

(3) Notwithstanding subsection (2)

\* \* \* \* \* \*

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no im-

plied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; ...

**5.** Section 1–201(10) reads:

(10) "Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court. N.Y.U.C.C. § 1–201(10) (McKinney 1964).

**6.** *See supra* note 4.

**7.** The official comment to Section 2–316(3)(b) makes clear that a buyer who uses goods despite having discovered a defect strictly limits any possibility of recovering for breach of warranty:

the time he decided to purchase them because he had been actually using such machines on a trial basis for several months. We believe that Sobiech's use of the machines and resultant actual knowledge of the problems in question preclude a finding of implied warranties concerning the nonexistence of such problems.

We do not, however, rest our decision simply on the cases holding that a purchaser cannot recover damages for breach of implied or express warranties that an examination of the goods should have revealed to him. *See, e.g., Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1291 (6th Cir.1982); *Royal Bus. Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 44 (7th Cir.1980). This case involves extensive use and actual knowledge of the problems in issue before purchase. Such use and knowledge precludes any implied warranties as to the performance of that machine or machines of identical design.[8] *See W.M. Hobbs, Ltd. v. Accusystems of Ga., Inc.*, 177 Ga.App. 432, 339 S.E.2d 646, 647 (1986) (purchaser's operation of machine on trial basis for one week precludes implied warranties in favor of purchaser); *Howard v. American Bus. Equipment of Columbus, Inc.*, 184 Ga.App. 550, 362 S.E.2d 127 (1987) (following *W.M. Hobbs*); *Henry Helde, Inc. v. WRH Prods. Co.*, 766 F.2d 105, 110–11 (3d Cir.1985) (under U.C.C. § 2–316(3)(b), purchaser's testing of performance of sample for certain defects precludes breach of warranty claim for those defects); *see also* J. White & R. Summers,

*Uniform Commercial Code* § 12–6, at 450–51 (2d ed. 1980).

### CONCLUSION

On the basis of the foregoing, we reverse and remand. Because Sobiech never validly revoked his acceptance, he is liable to ISM for the remainder of the purchase price of the machines plus interest as discussed to be calculated on the remand. Because no implied warranties were established, we reverse the award of breach-of-warranty damages to plaintiff.

---

8. Under paragraph (b) of subsection (3) warranties may be excluded or modified by the circumstances where the buyer examines the goods or a sample or model of them before entering into the contract.... Of course if the buyer discovers the defect and uses the goods anyway, or if he unreasonably fails to examine the goods before he uses them, resulting injuries may be found to result from his own action rather than proximately from a breach of warranty....
N.Y.U.C.C. § 2–316 (McKinney 1964) (Official Comment 8).
    We recognize that the Comment also goes on to state:
    Application of the doctrine of "caveat emptor" in all cases where the buyer examines the goods regardless of statements made by the seller is, however, rejected by this Article. Thus, if the offer of examination is accompa-

nied by words as to their merchantability or specific attributes and the buyer indicates clearly that he is relying on those words rather than on his examination, they give rise to an "express" warranty. In such cases the question is one of fact as to whether a warranty of merchantability has been expressly incorporated in the agreement. Disclaimer of such an express warranty is governed by subsection (1) of the present section.
*Id.* However, Judge Keenan found that there were no express warranties and this portion of the Comment does not affect the result in this case.

8. Finding no New York precedent on point, we adopt interpretations of the U.C.C. in similar cases from other jurisdictions, as we believe a New York court would.