71114. W. M. HOBBS, LTD. v. ACCUSYSTEMS OF
GEORGIA, INC. et al.
(339 SE2d 646)

Carley, Judge.

In November of 1983, appellant-plaintiff purchased a copying machine from appellee-defendant Accusystems of Georgia, Inc. (Accusystems). The equipment was manufactured by appellee-defendant Panasonic Company. Appellant subsequently experienced problems with the copier and appellees undertook remedial actions. However, in January of 1984, appellant gave notice that it was revoking its acceptance of the copier. OCGA § 11-2-608. Appellant attempted to return the equipment. However, appellee Accusystems refused to accept the equipment. In March of 1984, appellant filed the instant action against appellees, seeking the return of the purchase price or damages for breach of warranty.

During the course of discovery, it was established that, after its unsuccessful attempt to return the equipment, appellant had continued to use it as an integral part of its ongoing business. By September 1984, appellant had processed approximately 60,000 copies on the equipment. Appellees moved for summary judgment in their favor. They also sought permission to file a counterclaim seeking rent for the use of the machine as alternative relief. The trial court conducted a hearing and granted appellees leave to file their counterclaim but also granted their motion for summary judgment as to the main action against them. Appellant appeals the grant of summary judgment.

1. The thrust of appellant's argument concerns the efficacy of its January 1984 efforts to accomplish the revocation of its acceptance of the equipment. However, it was the events of the post-January 1984 period that prompted the trial court to grant summary judgment in the instant case. Under the relevant provisions of our Uniform Commercial Code, "it appears that a buyer who has attempted to reject rather than to accept goods may nonetheless accept them by virtue of his post-rejection conduct with respect to them. Likewise, a buyer who purports to revoke his acceptance of goods may be found to have re-accepted them if, after such revocation, he performs acts which are inconsistent with the seller's ownership of the goods. [Cits.]" Griffith v. Stovall Tire &c., Inc., 174 Ga. App. 137, 138 (329 SE2d 234) (1985).

The evidence shows that *after* appellant's purported revocation of its acceptance of the copier, it continued to use the equipment in its business and, by the time the motion for summary judgment was filed, had made some 60,000 copies therewith. Compare *Trailmobile Div. of Pullman v. Jones*, 118 Ga. App. 472 (164 SE2d 346) (1968) (no issue of post-rejection use involved). "By this evidence, appellee[s] made a prima facie showing that appellant had *re-accepted* the [equipment] *after* [its] purported revocation of acceptance, inasmuch as [appellant] had performed post-rejection acts which were inconsistent with the seller's ownership of the goods and which constituted [its] exercise of ownership. OCGA §§ 11-2-606 (1) (c), 11-2-602 (2) (a), 11-2-607 (2). Appellee[s] having thus pierced the allegations of the pleadings, it became incumbent upon appellant to produce specific evidentiary facts in order to raise a genuine issue that an effective revocation of acceptance had occurred." (Emphasis supplied.) *Griffith v. Stovall Tire &c., Inc.*, supra at 139. The only evidence concerning appellant's post-rejection continued use of the copier was simply that "it's more efficient for [appellant] to use it than not use it because [appellant] need[ed] a copier." Continued use of the equipment in furtherance of the efficient running of its business is an "exercise of ownership" by appellant (OCGA § 11-2-602 (2) (a)) and an "act inconsistent with [appellee's] ownership. . . ." OCGA § 11-2-606 (c). The trial court did not err in ruling that appellant had re-accepted the equipment and was not entitled to recover the full contract price. *Griffith v. Stovall Tire &c., Inc.*, supra. See also OCGA § 11-2-607 (1).

2. Since the evidence shows that, as a matter of law, appellant re-accepted the equipment and has no right to recover the full contract price, the question becomes whether appellant has an alternative remedy in the form of damages for breach of implied warranties. See OCGA § 11-2-714 (2). In granting summary judgment in favor of appellees as to this issue, the trial court relied upon the provisions of OCGA § 11-2-316 (3): "[W]hen the buyer before entering into the contract has examined the goods or the sample or model as fully as he desires or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him. . . ." The uncontradicted evidence is that appellant insisted that its original order of the equipment be made contingent upon a trial approval period. According to the evidence, the copier was left for approximately a week on a trial basis before appellant, having decided it could work out any difficulties, purchased it. Under this undisputed evidence, the trial court did not err in granting summary judgment to appellees based upon OCGA § 11-2-316 (3). Under that provision, there are no implied warranties "if the buyer voluntarily examines the goods, or a sample or a model as fully as he wishes." White & Summers, Uniform Commercial

434

Code, § 12-6, p. 367.

3. Appellees are entitled to retain the purchase price of the equipment and are not relegated to seeking rent for appellant's use of the equipment. Although appellant has accepted the equipment, it has no viable claim for breach of implied warranties.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED JANUARY 6, 1986.

*John C. Mayoue, Alvah O. Smith,* for appellant.
*Fred J. Stokes,* for appellees.