74538. FIAT AUTO U. S. A., INC. v. HOLLUMS.
(363 SE2d 312)

BENHAM, Judge.

Appellee Hollums purchased a 1980 Fiat Spider 2000 convertible automobile from an Atlanta-area Fiat dealer on March 5, 1981. Due to mechanical problems he had with the car, appellee filed suit against the dealer and appellant Fiat Auto U. S. A., Inc. ("Fiat") in October 1982, alleging breach of warranty and violation of the Magnuson-Moss Act (15 USCA § 2301 et seq.). A jury returned a verdict in favor of the dealer and against appellant, and awarded appellee $30,000. Appellant filed this appeal from the entry of a judgment reflecting the jury verdict.

1. In its first enumerated error, Fiat complains the trial court erred in denying Fiat's motion for directed verdict on the issue of liability under an implied warranty of fitness for a particular purpose. The implied warranty of fitness for a particular purpose is contained in the Uniform Commercial Code (UCC) and can be found in OCGA § 11-2-315: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." The warranty of fitness for a particular purpose differs from the warranty of merchantability (see OCGA § 11-2-314) in that the latter warrants fitness for the ordinary purposes for which such goods are used while the former "envisages a specific use by the buyer which is peculiar to the nature of his business. . ." UCC § 2-315, Official Comment, Par. 2. In order to find the implied warranty of fitness for a particular purpose, the statute "requires *both* the seller to have reason to know of the particular purpose for which the goods are required [by the buyer] *and* the buyer to rely on the seller's skill or judgment in selecting or furnishing suitable goods. . . ." *Bruce v. Calhoun First Nat. Bank*, 134 Ga. App. 790 (5)

(216 SE2d 622) (1975). The statute also requires that the seller know the buyer is relying upon the seller's skill or judgment. White & Summers, Uniform Commercial Code, § 9-9, p. 358 (2d ed. 1980).

It is undisputed in the case at bar that appellee never indicated he was purchasing the car for any purpose other than pleasure driving. Insofar as an automobile is concerned, that avowed purpose is not a "particular purpose" as that term is used in the UCC. See UCC, § 2-315, Official Comment, Par. 2; *Bruce v. Calhoun First Nat. Bank,* supra. Inasmuch as there was no conflict in the evidence concerning this issue and the evidence introduced, with all reasonable deductions therefrom, demanded a verdict for Fiat, the trial court erred in denying appellant's motion. OCGA § 9-11-50 (a).

2. Appellant also sought and was denied a directed verdict on the issue of consequential damages. While consequential damages are recoverable in an action for breach of warranty (OCGA § 11-2-715 (2)), the parties to a contract may limit or alter the measure of damages recoverable. OCGA § 11-2-719 (a) (1). The Code specifically states that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." OCGA § 11-2-719 (3).

In the case at bar, it is undisputed that appellee received from appellant a warranty which limited Fiat's obligation "to replacement or repair of, at the option of [Fiat] . . . such part as shall be actually defective and adjustments necessitated by such replacement or repair." In bold-face, capital letters, the warranty read: "THERE SHALL BE NO LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES UNDER THE ABOVE WARRANTIES . . ." Thus, appellant excluded consequential damages and limited its obligation to repairing or replacing defective parts and making adjustments necessary to those repairs or replacements. The limitations and exclusions were conspicuously placed on the warranty and were not unconscionable. *A-Larms, Inc. v. Alarms Device Mfg. Co.,* 165 Ga. App. 382 (2) (300 SE2d 311) (1983). In light of the undisputed evidence that appellant had legally excluded consequential damages as a remedy for breach of warranty, the trial court erred in denying appellant's motion for directed verdict. It follows that it was also error to instruct the jury on the recovery of such damages.

3. Appellant also sought a directed verdict on the issue of appellee's revocation of his acceptance. There was evidence that appellee had sent a letter to Fiat on January 29, 1982, in which he recounted his troubles with the car and asked appellant to take back the car and refund all monies expended by him, or to supply him with a new Spider 2000. The jury was authorized to conclude that appellee's letter

constituted a revocation of his acceptance of the car. See OCGA § 11-2-608. However, "a buyer who purports to revoke his acceptance of goods may be found to have re-accepted them if, after such revocation, he performs acts which are inconsistent with the seller's ownership of the goods. [Cit.]" *W. M. Hobbs, Ltd. v. Accusystems of Ga.*, 177 Ga. App. 432 (1) (339 SE2d 646) (1986). Subsequent to his letter of January 29, 1982, appellee removed the car from the dealer's lot (where he had left it in an attempt to sell it, and had rejected one offer of sale); took it to various auto shops for repairs; had the car painted another color; paid taxes on the vehicle; insured it; attempted to sell it on his own; and drove it over 6,000 miles. Appellee explained his post-revocation conduct as an effort to cut his losses. However, appellee's various post-revocation acts constituted exercises in ownership by him and acts inconsistent with the seller's ownership. See OCGA § 11-2-606 (1) (c). "[A]ny action taken by the buyer, which is inconsistent with his claim that he rejected the goods, constitutes an acceptance." UCC § 2-606, Official Comment, Par. 4. While the jury may have concluded that appellee revoked his acceptance of the auto when he wrote the letter to Fiat in January 1982, his continued use of the auto and the various acts of ownership he performed after the letter constituted, as a matter of law, the're-acceptance of the goods. See *W. M. Hobbs, Ltd. v. Accusystems of Ga.*, supra. Since a consumer may not recover for rescission of the contract when he has accepted the goods, the trial court should have directed a verdict in favor of appellant.

4. Appellant also unsuccessfully sought a directed verdict on appellee's claims of breach of express or implied warranties on the ground that appellee had failed to prove his damages. Damages for breach of warranty are recoverable only when the buyer has accepted the goods. OCGA § 11-2-714 (2); *Wolfes v. Terrell*, 173 Ga. App. 835 (2) (328 SE2d 569) (1985). While appellee presented evidence that he had revoked his acceptance of the automobile, that alone is not sufficient to determine whether a directed verdict on the issue of breach of warranty was in order since a party may set forth inconsistent claims (OCGA § 9-11-8 (e) (2)) and may pursue any number of inconsistent remedies prior to the formulation and entry of judgment. *Waller v. Scheer*, 175 Ga. App. 1 (3) (332 SE2d 293) (1985).

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. In a proper case, any incidental and consequential damages under Code section 11-2-715 may also be recovered." OCGA § 11-2-714 (2 and 3). In an effort to prove his damages, appellee presented evidence of the purchase price of the car ($10,981.96) and

costs he had incurred ($810 for painting and payments of $128.78, $226, and $115.70 for repairs), as well as various incidental and consequential expenses (taxes, insurance). The purchase price of the car was some evidence of the value the car would have had if it had been as warranted, but there was no evidence of the value of the automobile *as accepted* by appellee on March 5, 1981, the date of purchase. Without that figure, the jury was incapable of computing the amount of damage suffered by appellee without speculating. The value of the car at acceptance cannot be extrapolated from the costs incurred by appellee for repairs since several repairs were repeated. Without evidence of the actual value of the automobile as accepted by appellee, the jury was not equipped with the means by which it could award damages for any proven breach of warranty. Therefore, the trial court erred when it refused to direct a verdict in favor of appellant on the breach of warranty claims. Any error in the content of the jury charge regarding the computation of damages for breach of warranty is harmless in light of our holding that a directed verdict for appellant was in order.

5. The trial court informed the jury that the expenses of litigation are generally not permitted as damages in a contract case but could be awarded appellee where appellant had acted in bad faith, had been stubbornly litigious or had caused appellee unnecessary trouble and expense. See OCGA § 13-6-11. Appellant maintains it was error to so charge the jury in light of appellee's failure to present evidence of the actual costs of his attorney and the reasonableness of those costs.

"An attorney cannot recover for professional services without proof of their value. [Cit.] Generally, a party will proffer the opinion testimony of his present counsel as well as that of other attorneys in an effort to show what constitutes a reasonable attorney fee in light of the litigation history of the case. [Cits.]" *First Bank of Clayton County v. Dollar*, 159 Ga. App. 815 (4) (285 SE2d 203) (1981). An award of attorney fees is unauthorized if appellee failed to prove the actual costs of the attorney and the reasonableness of those costs. *Sun v. Langston*, 170 Ga. App. 60 (3) (316 SE2d 172) (1984).

In the case at bar, counsel for appellee, after the evidence was closed and he had been denied the opportunity to reopen his case, made a proffer of a portion of the evidentiary basis necessary for an award of attorney fees under OCGA § 13-6-11. Appellee's counsel stated he had spent 93 hours on the case and billed his time at a rate of $75 per hour. There was no proffer concerning the reasonableness of the attorney fees sought. Most importantly, no evidence concerning attorney fees was ever placed before the jury. In the absence of evidence from which the jury could make an award of attorney fees, it was error to instruct them on the making of such an award. See *Hub*

*Motor Co. v. Zurawski*, 157 Ga. App. 850 (4) (278 SE2d 689) (1981).

6. In light of the above holdings, appellee's request for the imposition of frivolous appeal damages pursuant to OCGA § 5-6-6, is hereby denied.

*Judgment reversed. Banke, P. J., and Carley, J., concur.*

Decided November 17, 1987 —
Rehearing denied December 1, 1987.

Eric J. Spitler, Edgar A. Neely, Jr., David C. Marshall, for appellant.

E. Wayne Wallhausen, Ray H. Ledford, for appellee.