A98A0647. EVANS TOYOTA, INC. v. CRONIC.
(503 SE2d 358)

SMITH, Judge.

Evans Toyota, Inc. appeals from the entry of judgment on a jury's verdict in favor of Glenn Cronic in an action brought by Cronic against Evans seeking rescission of his purchase of a used Toyota truck based upon a theory of fraudulent inducement. Evans raises ten enumerations of error. Upon review, we conclude that none of the ten is meritorious, and we affirm the judgment below.

Construed to support the jury's verdict, the evidence presented at trial showed that Cronic visited Evans's dealership in November 1995, when he was shopping for a pickup truck. He wanted a new truck and was interested in a Toyota but had a ceiling price of $20,000. A salesman, Harold Davis, showed Cronic a used '94 truck with 28,000 miles and explained that because the Toyota manufacturer's warranty covered the truck for 36 months or 36,000 miles, whichever was greater (60 months or 60,000 for the drive train), the

'94 truck would still be covered by the manufacturer's warranty. At that point, Cronic was not interested and still wanted to purchase a new truck. But after looking elsewhere and finding that the cost of a new truck would exceed his ceiling, he returned to Evans to look again at the used '94 Toyota pickup truck. Although Cronic had no particular automotive experience or training, he test drove the truck and looked under the hood to check fluid levels.

Davis told Cronic he would be "fully covered" under the manufacturer's warranty, "just like a brand new vehicle." He assured Cronic that "if anything happened, everything on this vehicle was covered under the manufacturer['s] warranty." The repeated touting of complete manufacturer's warranty coverage was, for Cronic, the "selling feature" that induced him to purchase the used truck. Jeffrey Masters, Evans's Used Car Manager, and Edward Federmann, its Vice President and General Manager, both conceded that this full warranty coverage was used as a "sales feature" in marketing the pickup, regardless of the existence of significant limiting language within the warranty. And in this case, such significant limitations did exist: the manufacturer's warranty provided that the "use of add-on parts/materials are not covered." Federmann testified that if non-Toyota parts are installed in the vehicle and something goes wrong, that would not be covered under the Toyota warranty. A significant difference in quality exists, and "[s]omebody else's parts, of course, can't be covered by Toyota, somebody else's fenders, paint systems, whatever." Similarly, if a repair is improperly performed by a non-Toyota-authorized repair person and a problem arises, that would void the warranty.

Terry Prickett, the original owner of the used truck purchased by Cronic, testified that the truck had been wrecked and repaired by non-Toyota-authorized repair persons, using non-Toyota parts. In fact, the only Toyota-authorized part used in the repair was the radiator. When Prickett traded in the truck to Evans in October 1995, he told Evans "up front" that the truck had been wrecked and repaired. And Masters admitted that Evans had knowledge, when the truck was traded in, that it had been wrecked and repaired, but it did not inform Davis, its salesman, of this fact.

The jury awarded Cronic compensatory damages in the amount of $22,402, attorney fees in the amount of $16,944, and punitive damages in the amount of $25,000.

1. In four enumerations, Evans contends the trial court erred in denying its motion for directed verdict.

(a) The essential elements of fraud are: (1) a representation by the defendant; (2) made with the knowledge it was false; (3) with the intention of deceiving the plaintiff; (4) reasonable reliance upon the representation by the plaintiff; and (5) loss by the plaintiff as a proxi-

mate result of the representation. *Simpson Consulting v. Barclays Bank*, 227 Ga. App. 648, 650 (1) (490 SE2d 184) (1997). Evans first argues that Cronic completely failed to present evidence with regard to the essential element of reasonable reliance. We do not agree.

Evans's argument focuses on Cronic's failure to question Davis about the truck's damage history or read the manufacturer's warranty before buying the truck, despite the presence on the truck's window of a federally mandated "Buyer's Guide" cautioning prospective buyers to be diligent in examining a used vehicle and listing many defects that could be present in used vehicles.

But Cronic's claim for misrepresentation is not based upon a concealment of a defect in the truck; it is based upon Davis's clear, unambiguous, and repeated statement to him that the truck was "fully" covered under the manufacturer's warranty notwithstanding the dealership's knowledge that it had been wrecked and repaired with non-Toyota-authorized parts and labor. The evidence showed that Davis himself was not told of this, preventing him from disclosing it to Cronic; the evidence also showed that Davis was encouraged to use this complete warranty coverage, and did intentionally use it, as a selling feature. We must conclude that this was intentional misrepresentation by Evans. See *Rivers v. BMW of North Am.*, 214 Ga. App. 880, 884 (2) (449 SE2d 337) (1994). Under these circumstances, whether Cronic's reliance upon Davis's repeated statements about "full" warranty coverage was reasonable was a question for the jury. *Brown v. Techdata Corp.*, 238 Ga. 622, 625 (234 SE2d 787) (1977).

(b) Evans also asserts that Cronic failed to show the essential element of damage caused by the salesman's misrepresentation, which Evans contends should have been shown by presenting evidence of the difference in value of the truck with and without the "defect." This is simply incorrect; that measure is used when the plaintiff *affirms* the contract, keeps its benefit, and sues on the contract for damages. *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 75 (441 SE2d 421) (1994). In this case, Cronic elected to *rescind* the contract rather than affirm it. Cronic's actual damages therefore must be measured by the amount it would take to restore him to the status he held before the transaction. See generally OCGA § 13-4-60.

(c) Evans maintains that a directed verdict should have been granted because Cronic's tender was incomplete and thus insufficient to support rescission of the sales contract. Evans claims that Cronic refused to permit it to inspect the car to determine whether frame damage existed or to repair it if problems existed, and that Cronic therefore had no basis for rescission. The record belies Evans's assertion of an incomplete tender. Evans cites no authority for the proposition that Cronic had an obligation to allow Evans to repair the truck before rescinding, and we find none. Further, a rescission notice was

sent to Evans by Cronic's counsel on November 21, 1995, setting forth an unconditional and unequivocal continuing tender of the truck. Thereafter, Cronic did not drive the truck, kept up payments to the lender, and paid for insurance on the truck. He did nothing inconsistent with his rescission.

(d) Evans contends the trial court erred in denying its motion for directed verdict because Davis's statements about "full" coverage under the manufacturer's warranty were merely an expression of opinion regarding the legal effect of that document. Relying on *Brown v. Mack Trucks*, 111 Ga. App. 164 (141 SE2d 208) (1965), Evans argues that such an expression of opinion cannot serve as a basis for a claim of fraud. In *Brown*, the alleged misrepresentation was that a vendor's single-interest insurance policy would cover the truck's purchaser. Id. This Court held that this was a question of law; the truth of the representation depended upon the interpretation of the policy. Id. at 166.

The representation attributable to Evans is not similar. Evans was not simply mistaken in its *opinion* of the *legal* effect of the manufacturer's warranty; it had *actual knowledge* that the truck had been wrecked and repaired so as to remove those repairs from warranty coverage. Its representation of "full" coverage "bumper to bumper" was, in fact, false; it was not an expression of opinion.

2. In two enumerations, Evans challenges the award of attorney fees.

(a) Contrary to Evans's contention, the award of attorney fees was adequately supported by evidence. Evans concedes that Cronic's attorney testified regarding her hourly rate and the number of hours she spent on the case. Evans argues, however, that only "conclusory" testimony was presented showing that the costs were reasonable. We do not agree. The testimony of Cronic's attorney is distinguished from that presented in *Hughes v. Great Southern Midway*, 265 Ga. 94 (454 SE2d 130) (1995), on which Evans relies. In *Hughes*, the attorney testified only to the total amount of the fee and that he had done "a lot of research" and had consulted specialists. Id. at 95 (1). He did not offer any evidence concerning the number of hours, his hourly rate, or reasonableness, and no accounting was made of the amounts paid the specialists consulted. The Supreme Court held this evidence to be conclusory and insufficient. Id. at 96.

Here, in contrast, the attorney detailed the services she performed, including pleadings, depositions, and correspondence, and on cross-examination testified that her hourly rate was considered not only reasonable but low for an attorney with 20 years experience. The jury had sufficient information from which to decide this issue. See *Campbell v. Bausch*, 195 Ga. App. 791, 793 (2) (b) (395 SE2d 267) (1990).

(b) Evans also maintains the trial court erred in sustaining the objection of Cronic's attorney to a question seeking to have her state whether she had a contingent fee contract with Cronic. The trial court ruled it was not relevant and refused to rule that the attorney must answer the question. None of the cases cited by Evans supports its argument that this was error and we have found no other authority holding that this information is relevant. In *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401 (433 SE2d 606) (1993), this Court held that an award of attorney fees *may* be based upon a contingent fee contract. Id. at 403 (1). But we also reiterated that the court is not *bound* by such a contract because an award of attorney fees must be determined "upon evidence of the reasonable value of the professional services which underlie the claim for attorney fees. [Cit.]" Id. And the existence of a contingent fee agreement does not bear any relationship to the *value* of the professional services. The trial court did not err in refusing to rule that the attorney must disclose whether a contingent fee contract was involved.

3. The rest of Evans's enumerations of error involve the trial court's charge to the jury.

(a) In three enumerations, Evans contends the trial court erred in failing to give certain charges. But Evans failed to object properly to this failure before the jury returned its verdict, as required by OCGA § 5-5-24 (a). At the conclusion of the jury charge, Evans's objection was merely: "I object to every charge that I tendered for you to consider that you didn't give." This was insufficient. We note as well that the record contains no requests to charge from Evans covering the areas about which Evans now maintains the trial court failed to charge. Under these circumstances, we find no reversible error. *Feifer v. Reliance Kitchens*, 189 Ga. App. 653, 654 (3) (377 SE2d 28) (1988).

(b) Evans argues that the trial court erred in its charge to the jury on expenses of litigation. The court charged the jury on OCGA § 13-6-11. In explaining "bad faith," the court stated that the term "refers not only to the negotiation and formulation of a contract, but also includes the performance of the contractual provisions. . . . If there is bad faith in the making or performance of a contract, litigation expenses . . . are authorized." Evans objected, on the ground that this charge "appeared to apply to a contractual situation, and I think it was misleading to the jury." The court declined to recharge the jury, since neither party had submitted a charge on this point.

OCGA § 13-6-11 applies when a "contract was procured or transacted in bad faith or was induced by fraud and deceit. [Cit.]" *Country Pride Homes v. DuBois*, 201 Ga. App. 740, 741 (2) (412 SE2d 282) (1991). That is exactly the situation in this case. We find no error.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 26, 1998 —
RECONSIDERATION DENIED JULY 9, 1998 — 

*Paul S. Liston*, for appellant.
*Carol D. Sweet*, for appellee.