A04A1742. CROWE et al. v. CARMAX AUTO SUPERSTORES, INC.
(612 SE2d 90)

ADAMS, Judge.

Tina and Thad Crowe appeal from the trial court's order granting summary judgment to defendant CarMax Auto Superstores, Inc.

The record shows that the Crowes purchased a 1999 Dodge Durango automobile from CarMax on October 5, 2002. They received a 30-day/1,000 mile express warranty from CarMax, and they purchased an 18-month/18,000 mile "Mechanical Repair Agreement" (MRA). The obligor on this extended warranty was Consumer Program Administrators, Inc., not CarMax. Over the course of the next year, the Crowes brought the vehicle to CarMax and other repair facilities numerous times for a variety of repairs. All repairs made within the original and extended warranty periods were made without cost to the Crowes, except for deductibles, although those were sometimes waived. Nevertheless, the Crowes contend they lost confidence in the vehicle, and on May 30, 2003, the Crowes filed a complaint against CarMax, asserting claims for breach of implied and express warranties under the Magnuson-Moss Warranty Act and Georgia law. The trial court granted summary judgment to CarMax on both the express and implied warranty claims, and the Crowes do not challenge that ruling insofar as it pertains to their express warranty claims. However, the Crowes challenge the grant of summary judgment on their implied warranty claim, contending that they have established a viable claim under the Magnuson-Moss Warranty Act.

---

[10] See *Gilbert*, supra; *Barksdale*, supra at 185-186.

The Magnuson-Moss Warranty Act allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under . . . (an) implied warranty . . . (to) bring suit for damages and other legal and equitable relief." [15 USC § 2310 (d) (1).] The Act defines "implied warranty" as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." [15 USC § 2301 (7).] To recover, therefore, [the Crowes] must show that [CarMax] breached the implied warranty of merchantability arising under Georgia law. [See id.; see also *Sharpe v. Gen. Motors Corp.*, 198 Ga. App. 313, 314 (3) (401 SE2d 328) (1991) (Magnuson-Moss Warranty Act "relates to *damages*, not liability, and provides for consumers' recovery of costs and attorney's fees in successful actions for breaches of warranty *under state law*").]

(Emphasis in original.) *Dildine v. Town & Country Truck Sales*, 259 Ga. App. 732, 733-734 (577 SE2d 882) (2003).

We recently considered the implied warranty of merchantability under Georgia law in the case of *Soto v. CarMax Auto Superstores*, 271 Ga. App. 813 (611 SE2d 108) (2005):

Under OCGA § 11-2-314 (1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "This warranty protects consumers from defects or conditions existing at the time of sale." (Citation, punctuation and footnote omitted.) *Dildine v. Town & Country Truck Sales*, 259 Ga. App. [at 734]. In *Jones v. Marcus*, 217 Ga. App. 372 (457 SE2d 271) (1995), this court held that "it is obvious that the alleged defect or condition must have existed at the time of the sale." Id. at 373 (1). This is logical, because it is clear that "the implied warranties warrant against defects or conditions existing at the time of sale, but [they] do not provide a warranty of continuing serviceability. [Cit.]" Id. It follows that proof that the [vehicle] was defective *when it was sold* is an essential element of [the Crowes'] claim for breach of the implied warranty of merchantability. See also *McDonald v. Mazda Motors*, 269 Ga. App. 62, 68 (2) (b) (603 SE2d 456) (2004) (physical precedent only) (latent defect existing at time of sale essential to recovery on claim for breach of implied warranty); *Simpson v. Hyundai Motor*

*America*, 269 Ga. App. 199, 204 (1) (b) (603 SE2d 723) (2004).

Id. at 814-815 (1) (a).

The Crowes contend the trial court erred by finding that they did not meet their burden of showing that a jury question exists concerning whether the vehicle was defective at the time of sale. We find no error. Although the vehicle was first returned to CarMax just five days after it was sold, the record shows that those repairs were primarily to remedy cosmetic defects that CarMax agreed to fix at the time of sale. The Crowes returned the car again on October 22, after what they contend was 11 days of actual use.[1] The problems noted on that visit were that the vehicle was consuming massive amounts of oil, that the instrument panel lights were flickering, and that the four-wheel-drive illumination light was not working. Tina Crowe testified that the problems were fixed on that visit.

The vehicle was returned to CarMax on November 13, 2002, because the check engine light was on. The repair ticket indicated that "false codes" were detected and removed. However, the problem with the check engine light reappeared in January 2003, and the vehicle was returned to CarMax. At this time a broken ground wire was found, and Tina Crowe testified the problem was fixed to her satisfaction, as was a problem with the rear windshield wiper, which was remedied by replacing the wiper motor.

On the January visit, it was also noted that the vehicle was jerking and the engine was revving up to 6,000 rpm when driving. Tina Crowe testified that the problem with the engine revving persisted for several months and that she returned the car for repairs several times before the control module was replaced and the problem fixed in April 2003. The record shows that during this same period the engine was running rough, but that problem was attributed to carbon build-up in the cylinders and was also remedied. Tina Crowe testified she did not take the vehicle back to CarMax after the MRA expired, but instead took it to another facility for repair when it began stalling out in June 2003. At that time a fuel system tune-up was performed. A low out speed sensor was replaced in August, and a ball bearing was replaced on the front of the car in October 2003. At that time the Crowes had owned the vehicle a little over a year, and the odometer reading was at 65,621 miles, indicating the car had been driven over 25,000 miles during that time. Tina Crowe testified that at the time of her deposition in December 2003 there were no current problems with the car.

---

[1] The odometer reading on that date was 41,536. At the time of purchase it was 40,376, indicating the car had been driven over 1,100 miles.

Based on this evidence, the trial court found that the Crowes failed to establish that the vehicle was defective when sold. We agree that this evidence does not present a jury question on this essential element of their claim. Although the vehicle was repaired on numerous occasions over the course of the first year of ownership, as the trial court noted, for the most part these repairs were for different items or concerns on each occasion, and the problems were all remedied at the time the car was first brought in or on a subsequent visit. And although the Crowes argue strenuously that at least some evidence of a defect at the time of sale is shown by the fact that the car had to be returned for repairs after it was driven for just 11 days, the record shows that the primary complaint at that time was that the vehicle was consuming massive amounts of oil and that problem was remedied on that repair visit and did not recur. Moreover, although the vehicle had only been owned for a short period, it had already been driven in excess of 1,100 miles. The recurring problem with the engine revving was not detected until about three months later, and at that time the car had been driven almost 5,000 more miles. Although it took several attempts, that problem was also fixed. We note also that by the time the bearings had to be replaced in October 2003, the car had been driven over 25,000 miles since it was purchased about 13 months previously. Moreover, at the time of Tina Crowe's deposition in December 2003, there were no current problems with the car. Under these facts, we agree that no defect has been shown to exist at the time of purchase, and to find otherwise would require the jury to rely on speculation or conjecture, improper bases for imposing liability. *Dildine*, 259 Ga. App. at 734; *Simpson v. Hyundai Motor America*, 269 Ga. App. at 204-205. The trial court did not err in granting summary judgment on the implied warranty claim.

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 17, 2005.

*Krohn & Moss, Adam Krohn, Amy M. Budow, Eric S. Fortas*, for appellants.

*Carter & Ansley, John L. McKinley, Jr.*, for appellee.