## A05A0326, A05A0327. MITCHELL v. BACKUS CADILLAC-PONTIAC, INC.; and vice versa.
### (618 SE2d 87)

MIKELL, Judge.

In Case No. A05A0326, Willie Mitchell appeals from the grant of a directed verdict to Backus Cadillac-Pontiac, Inc. ("Backus"), in his suit for rescission, breach of warranty, fraud, and other causes of action. We reverse in part, holding that the trial court erred in directing a verdict against him on his claim for rescission. The remainder of the judgment is affirmed. In Case No. A05A0327, Backus appeals from the denial of its motion for summary judgment. We affirm as to the rescission claim but do not consider the remainder of Backus's appeal as it is moot.[1]

*Case No. A05A0326*

A motion for directed verdict should be granted only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict. All evidence must be construed most favorably to the non-movant. Before the

---

trial court can direct a verdict for the movant, he must find from the evidence that there is *no evidence of any kind* supporting the nonmovant's position.[2]

So viewed, the evidence shows that on December 15, 1997, Mitchell bought a 1995 Cadillac Eldorado with 45,296 miles on it from Backus for $22,180, trading in a car for $4,400 and financing the remainder through a home equity loan, which he continues to pay at the rate of $76 per week.[3] *According to* Mitchell, he asked the salesman whether the car had been in a wreck, and the salesman replied that it had not. Mitchell subsequently learned that the car had been in a collision in early 1996, requiring $3,874.57 in repairs, which were performed by Backus. Mitchell began experiencing problems with the vehicle and brought it to Backus for numerous repairs. Mitchell sought to return the vehicle and cancel the contract, but Backus refused.

On October 8, 1999, Mitchell filed a pro se action against Backus in magistrate court, but the case was transferred to superior court. Mitchell then retained counsel and filed an amended complaint alleging (1) breach of warranty, both express and implied, under the Uniform Commercial Code (UCC), (2) breach of contract, (3) violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss"),[4] (4) rescission, and (5) fraud and deceit. The parties filed cross-motions for summary judgment. The trial court denied both motions, and the case proceeded to trial on the issues of breach of express warranty, revocation of acceptance, fraud, rescission, and violation of Magnuson-Moss.

At trial, Mitchell testified that he went to look at the Eldorado on a Friday. The salesman, Charlie Cook, let him take the vehicle home over the weekend. Mitchell testified that he did not notice anything wrong with it other than a few exterior blemishes. According to Mitchell, Cook assured him that the car had never been wrecked. Mitchell testified that he relied on this statement and that he would not have purchased the car had he known about the prior damage to it.[5] Mitchell further testified that he learned about the collision about three weeks after he purchased it when he sought out the car's previous owner, Lance Smith, in order to obtain an extra set of keys.

---

[2] (Citation and punctuation omitted; emphasis in original.) *Willis Mining, Inc. v. Noggle*, 235 Ga. App. 747, 751 (4) (509 SE2d 731) (1998).

[3] At trial, Mitchell testified that he had paid for 329 weeks.

[4] 15 USC § 2310 (d).

[5] According to a separation notice signed by Backus's used car manager, Backus terminated Cook's employment on January 21, 1998, for failure to follow company policies.

According to Mitchell, Smith invited him into his office while Smith telephoned George B. Backus, Jr. ("Mr. Backus"), one of the dealership's owners. After the conversation, Mitchell went to Mr. Backus's office, told him that he knew that the car had been wrecked, and informed Mr. Backus that he did not want it. Mr. Backus then agreed to find Mitchell another car, an "even swap." However, Mr. Backus never found him an even trade; instead, the dealership located vehicles for which it wanted thousands of dollars more. Three of the vehicles Backus found would have required Mitchell to pay an additional $13,600 to $19,000.

Mr. Backus testified that he became aware in January 1998 that Mitchell was dissatisfied with the car, not because it had been in a wreck, but because he had some problems with it that had not been corrected when it was delivered. Mr. Backus testified that his dealership repaired the problems. He further testified that Mitchell did not complain about the car being in a collision until "much later," in June or July, after Backus tried to find him a replacement car. According to Mr. Backus, his used car manager went to two auctions for several months trying to find the identical car, but he was unsuccessful.

Mitchell testified that he experienced numerous problems with the vehicle, including the fact that frequently it would not start. Mitchell testified that Backus picked up the car with a wrecker seven or eight times, put a new battery in it three times, and repaired a shortage in the power driver's seat. Backus also told him that the car's cell phone was draining the battery, so the repair department removed the phone. Backus finally told him that he had to drive the car every day so that the battery would not drain. Mitchell had a sun roof installed on the vehicle by a third party, and Mr. Backus testified that, based on the repair orders, the "no start" problem was caused by the sun roof installation and the lack of the car being driven.

Mitchell testified that at the time of trial, the car was not running; that the engine skipped; and that the windshield, which had to be replaced after the wreck, leaked water and drained onto the control module. Seventy-three pages of repair orders were introduced into evidence, although some were duplicates.

After the evidence was closed, Backus moved for a directed verdict on the fraud claim because there was no evidence of the diminution in value of the vehicle attributable to the collision. The trial court granted the motion, ruling that Mitchell failed to prove damages. In addition, the court directed a verdict on the issues of rescission and revocation of acceptance because Mitchell retained possession of the vehicle. Mitchell appeals these rulings as well as the denial of his motion for summary judgment.

1. In his fifth enumerated error, Mitchell contends that the trial court erred in directing a verdict on his fraud claim for failure to prove damages.

(a) "[A] party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud."[6] These two options each contain an element of fraud. But the measure of damages is quite different. If the disgruntled party chooses the first option, the "affirm and sue" option, the measure of his actual damages "is the difference between the actual value of the property at the time of purchase and what the value would have been if the property had been as represented."[7] If he makes the second choice, the "rescind and sue" option, the measure of his actual damages is the amount of money necessary to restore him to the status he held before the transaction.[8]

In the case at bar, Mitchell attempted to pursue both causes of action. The trial court properly ruled that Mitchell's "affirm and sue" claim failed because he failed to prove damages. He did make an offer of proof that, based on his research on the Internet, the car was worth 18 percent less than what he paid for it.

> [A]n owner of property can be qualified to state an opinion as to value. But opinion evidence as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion.[9]

Moreover, "the question of whether a witness has established sufficient opportunity for forming a correct opinion, and a proper basis for expressing his opinion, is for the trial court. Absent an abuse of discretion, the trial court's decision will not be disturbed."[10] In this case, the trial court did not abuse its discretion in excluding Mitchell's opinion testimony concerning the value of the car after it had been wrecked and repaired. Although Mitchell testified that he had bought

---

[6] (Citation and punctuation omitted.) *Brown v. Garrett*, 261 Ga. App. 823-824 (584 SE2d 48) (2003).

[7] (Citation and punctuation omitted.) *Bennett v. D. L. Claborn Buick*, 202 Ga. App. 308, 310 (2) (414 SE2d 12) (1991).

[8] See *Evans Toyota v. Cronic*, 233 Ga. App. 318, 320 (1) (b) (503 SE2d 358) (1998), overruled on other grounds, *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 233 (2) (547 SE2d 637) (2001).

[9] (Citations and punctuation omitted.) *Monroe v. Hyundai Motor America*, 270 Ga. App. 477, 478 (606 SE2d 894) (2004).

[10] (Citation and punctuation omitted.) Id. at 479.

and sold cars over a period of 30 years, he further testified that the only bases for his knowledge of the value of the automobile in its defective condition were talking to people in the car business and performing Internet research. The first basis was inadmissible hearsay, and when the court probed Mitchell concerning the second ground, he stated that the vehicle was worth 18 percent less regardless of the extent of the damage incurred in the wreck. Under these circumstances, the trial court did not abuse its discretion in ruling that Mitchell failed to lay a proper foundation for the admission of his opinion evidence.

(b) However, Mitchell's failure to introduce probative evidence as to the value of the vehicle in its true condition at the time of purchase is not fatal to his claim for rescission, i.e., his "rescind and sue" option. If he recovered pursuant to that claim, his actual damages would be measured by the amount it would take to restore him to the status he held before the transaction.[11] If a purchaser has promptly restored the subject of the contract to the seller, or offered to do so, his action is one for rescission at law and he is entitled to recover as restitution the purchase price actually paid by him.[12] There was evidence in the record of the purchase price.

The measure of damages for a "rescind and sue" claim is always the amount necessary to restore the purchaser to the status he held before the transaction. But that figure may or may not be equivalent to the purchase price. Because rescission can also be an equitable action, a trial court can mold the verdict to restore the status quo, and the relief may or may not require the return of the vehicle.[13] We note for example that, by the time of trial, Mitchell had already paid $76 per week for 329 weeks for a total of $25,004. That sum plus his "trade in" of $4,400 is a sum in excess of the purchase price.

2. The trial court held that Mitchell could not recover on the rescission claim because he retained possession of the car. This was error.

> One seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so; he need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so would be unreasonable.[14]

---

[11] *Evans Toyota,* supra.

[12] *Brown v. Techdata Corp.,* 238 Ga. 622, 626 (234 SE2d 787) (1977).

[13] Compare id. with *Brown v. Garrett,* supra.

[14] (Citations omitted.) *Crews v. Cisco Bros. Ford-Mercury,* 201 Ga. App. 589, 590 (1) (411 SE2d 518) (1991).

Based on this broad principle, we held in *Crews v. Cisco Bros. Ford-Mercury*[15] that a purchaser obligated on a car loan to a third-party creditor, as Mitchell was, need not necessarily tender back the vehicle in order to rescind the contract and sue for fraud.[16] In any event, there is evidence in this case that Mitchell attempted to return the vehicle and demanded a refund of the purchase price. Mitchell testified that he informed Mr. Backus that he did not want the car upon learning that it had been wrecked, within three or four weeks after he purchased it. Mr. Backus testified that he refused to accept the car and issue a refund because Mitchell "had purchased the car as is." However, in *City Dodge v. Gardner*,[17] our Supreme Court held that an "as is" contract did not negate an express warranty by a seller's agent that a car had never been wrecked.[18] Moreover, where, as here, there is evidence that the buyer attempted to return the vehicle but the seller refused to accept it, the buyer has made a sufficient "offer to restore" within the meaning of OCGA § 13-4-60 in order to claim the remedy of rescission. That Code section provides in part that "in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract." Therefore, neither the disclaimer language in the bill of sale nor Mitchell's continued possession of the vehicle warrant a directed verdict on his rescission claim.

Backus asserts that even if Mitchell had tendered the vehicle, he could not rescind the sale because he did not offer evidence of fraud. We disagree. The elements of fraud are: (1) a false representation, (2) made by the defendant with the knowledge that it was false, (3) and with the intention of deceiving the plaintiff, (4) reasonable reliance upon the representation, and (5) loss resulting from the misrepresentation.[19] In the case at bar, Mitchell testified that Backus's salesman represented that the subject vehicle had never been wrecked. The representation was false, as demonstrated by the repair bill from the collision. A jury may infer knowledge of the falsity from the fact that the vehicle was repaired by Backus. Evidence was introduced that the salesman's employment was terminated within a month after he sold the car to Mitchell. In addition, Mitchell testified that he learned that the car had been wrecked approximately three weeks after the purchase and so informed Mr. Backus, leading to a possible

---

[15] Id.

[16] Id. at 591 (1). Accord *Safadi v. Thompson*, 226 Ga. App. 685, 687 (2) (487 SE2d 457) (1997).

[17] 232 Ga. 766 (208 SE2d 794) (1974).

[18] Id. at 767.

[19] *Evans Toyota*, supra at 319-320 (1) (a). See also *City Dodge*, supra at 769-770, n. 1.

inference that the salesman was fired for deceiving Mitchell. Sufficient circumstances were shown to create a jury issue as to the salesman's intentional deception, a deception which would be attributed to his employer as a matter of law.[20] "Although fraud may not be presumed, slight circumstances may be sufficient to carry conviction of its existence."[21]

As to the next factor, whether Mitchell reasonably relied upon Backus's misrepresentation is a jury question. Mitchell testified that he took the vehicle home for the weekend before purchasing it and did not notice anything other than a few blemishes. This did not raise a concern for him because he had previously purchased a used vehicle from Backus when Mr. Backus's father was alive. That vehicle also had a few minor blemishes, and Mr. Backus's father had taken care of them. Under these circumstances, whether Mitchell's reliance on the representation that the vehicle had not been wrecked was reasonable was for a jury to decide. "Ordinarily the question whether the complaining party could ascertain the falsity of the representations by proper diligence is for determination by the jury."[22] Finally, there is evidence Mitchell suffered loss due to the misrepresentation. For instance, Mitchell testified that the windshield, which had to be replaced after the wreck, leaked water and drained onto the control module. Therefore, the trial court erred in directing a verdict on the rescission claim.

3. Mitchell asserts that the trial court erred in directing a verdict against him on the issue of revocation of acceptance of the vehicle pursuant to OCGA § 11-2-608. That Code section provides that a buyer may revoke his acceptance of goods whose nonconformity substantially impairs its value to him. Pursuant to OCGA § 11-2-711 (1), a buyer who justifiably revokes acceptance of goods may cancel the contract and recover the purchase price. But this remedy is not available to a buyer who "[d]oes any act inconsistent with the seller's ownership"[23] after notifying the seller of such revocation.[24] Here, Mr. Backus's testimony that he refused to take back the car and refund Mitchell's money is some evidence of Mitchell's attempt to revoke acceptance of it. But thereafter, Mitchell continued to drive the vehicle (when it was operable) and had a sunroof added to it. "[A] buyer who purports to revoke his acceptance of goods may be found to have reaccepted them if, after such revocation, he performs acts

---

[20] See *Horne v. Claude Ray Ford Sales*, 162 Ga. App. 329 (1) (290 SE2d 497) (1982).

[21] (Citations and punctuation omitted.) Id.

[22] (Citations and punctuation omitted.) Id. at 330 (2); see also *Bennett*, supra at 310.

[23] OCGA § 11-2-606 (1) (c).

[24] See OCGA § 11-2-608 (2): "Revocation of acceptance . . . is not effective until the buyer notifies the seller of it."

which are inconsistent with the seller's ownership of the goods."[25] Mitchell's post-revocation acts constituted exercises in ownership by him and acts inconsistent with Backus's ownership.[26] Therefore, the trial court did not err in directing a verdict for Backus on this issue.

Although post-revocation acts inconsistent with the seller's ownership are fatal to a buyer's attempt to revoke acceptance under the Uniform Commercial Code, such acts are not necessarily fatal to a claim under Georgia's common law right of rescission, a right codified as OCGA § 13-4-60.[27]

4. Mitchell complains that the trial court erred in directing a verdict on his claims concerning breach of a written warranty. We disagree.

Mitchell testified that Mr. Backus sold him a "golden key warranty" providing bumper to bumper coverage for six years or 70,000 miles. However, he did not produce any such document nor account for its absence, rendering his testimony inadmissible under the best evidence rule, OCGA § 24-5-21. Moreover, the evidence shows that, at the time of purchase, Mitchell received a document that stated: "WARRANTY. MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on the vehicle. Consult the manufacturer's warranty booklet for details as to warranty coverage, service location, etc." The manufacturer's warranty booklet for a 1995 Cadillac, which Mitchell's counsel obtained during discovery, was introduced, and it provided for coverage for "four years, 50,000 miles." Mr. Backus testified that he was obligated to perform warranty repairs for "four years, 50,000 miles." Invoices introduced into evidence show that Backus performed repairs under warranty during the relevant period, from the date of purchase until October 1999. Although Mitchell testified that he took the vehicle to three other dealers to get warranty service, there was no evidence that a GM dealer refused to repair the vehicle before the warranty expired in October 1999. Therefore, the trial court did not err in directing a verdict on his claim of breach of a written warranty.

5. Nor did the trial judge err in directing a verdict for Backus on the issue of whether Backus breached its express warranty that the

---

[25] (Citation and punctuation omitted.) *Fiat Auto U.S.A. v. Hollums*, 185 Ga. App. 113, 115 (3) (363 SE2d 312) (1987) (buyer had car repaired and painted another color; paid taxes on it; insured it; attempted to sell it on his own; and drove it over 6,000 miles). Accord *Olson v. Ford Motor Co.*, 258 Ga. App. 848, 850 (1) (575 SE2d 743) (2002) (buyer used his implied ownership of the truck in negotiations with a credit union, continued paying the note, taxes and insurance on the vehicle).

[26] *Jenkins v. Gen. Motors Corp.*, 240 Ga. App. 636, 637-638 (4) (524 SE2d 324) (1999) (continued use of vehicle constituted reacceptance). See also *W. M. Hobbs, Ltd. v. Accusystems of Ga.*, 177 Ga. App. 432, 433 (1) (339 SE2d 646) (1986) (same regarding equipment).

[27] See Division 2 above.

vehicle had never been in a collision. In this regard, OCGA § 11-2-313 (1) (a) provides: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." A seller's representation that a car had never been wrecked creates an express warranty.[28] However, to recover, the buyer must prove damages. The measure of damages in a breach of warranty action "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted."[29] As Mitchell did not offer probative opinion testimony as to damages, see Division 1 (a), this claim fails.

6. Mitchell also contends that the trial court erred in directing a verdict on the issue of whether he was entitled to relief under Magnuson-Moss, 15 USC § 2310 (d) (1).

> The Magnuson-Moss Warranty Act allows a "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under an implied warranty to bring suit for damages and other legal and equitable relief." [15 USC § 2310 (d) (1).] The Act defines "implied warranty" as "an implied warranty arising under State law in connection with the sale by a supplier of a consumer product." [15 USC § 2301 (7).] To recover, therefore, [Mitchell] must show that [Backus] breached the implied warranty of merchantability arising under Georgia law.[30]

Under OCGA § 11-2-314 (1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. This warranty protects consumers from defects or conditions existing at the time of sale."[31] To be merchantable, used cars must "pass without objection in the trade under the contract description, and they must be fit for the ordinary purposes for which cars are used."[32] Proof that the car was defective

---

[28] *City Dodge*, supra at 767.

[29] OCGA § 11-2-714 (2). See *Monroe*, supra at 478.

[30] (Punctuation and footnotes omitted.) *Dildine v. Town & Country Truck Sales*, 259 Ga. App. 732, 733-734 (1) (577 SE2d 882) (2003). Accord *Crowe v. CarMax Auto Superstores*, 272 Ga. App. 249 (612 SE2d 90) (2005). See also *Sharpe v. Gen. Motors Corp.*, 198 Ga. App. 313, 314 (3) (401 SE2d 328) (1991) ("federal statute merely relates to *damages*, not liability, and provides for consumers' recovery of costs and attorney's fees in successful actions for breaches of warranty *under state law*") (citation omitted; emphasis in original).

[31] (Punctuation and footnotes omitted.) *Dildine*, supra at 734 (1).

[32] (Punctuation omitted.) *Soto v. CarMax Auto Superstores*, 271 Ga. App. 813, 815 (1) (b)

when sold is an essential element of this claim.[33] Mitchell contends that because the car had been wrecked and repaired, it would not, as a matter of law, "pass without objection in the trade under the contract description." However, Mitchell cites no authority for this proposition. Accordingly, this enumeration fails.

7. Mitchell enumerates error upon the denial of his motion for summary judgment on the issues of breach of express warranty, damages for fraud, revocation of acceptance, and violation of Magnuson-Moss. However, direction of a verdict, where affirmed, renders the denial of summary judgment moot.[34] In this case, the trial court specifically directed a verdict as to "all claims." "If, after a summary judgment is denied, there is a trial and the evidence shows that a verdict for the opposing party is authorized, the error is harmless."[35] A verdict for Backus was authorized on all issues except rescission, which is addressed infra in the cross-appeal.[36] Insofar as the remaining issues are concerned, the denial of Mitchell's motion for summary judgment is moot.

8. On remand, Mitchell will be entitled to a trial on his cause of action for rescission, i.e., "rescind and sue." The issues for the jury will be (a) whether Mitchell made an offer to rescind, (b) whether his offer was timely, (c) whether he has proved a sufficient reason for not restoring the vehicle to Backus,[37] (d) the five elements of fraud,[38] and (e) the amount of money necessary to restore him to the status prior to the transaction. Because the action is equitable, Backus would be entitled to an offset for the value derived by Mitchell from his use of the vehicle.

## Case No. A05A0327

9. In the cross-appeal, Backus assigns error to the denial of its motion for summary judgment. As noted above in Division 7, the direction of a verdict renders the denial of the motion moot on all issues except rescission. Given our reversal of the verdict and judgment on that issue, we consider Backus's motion for summary judgment on the rescission claim, examining the evidence before the

---

(611 SE2d 108) (2005), citing OCGA § 11-2-314 (2) (a), (c).

[33] *Simpson v. Hyundai Motor America*, 269 Ga. App. 199, 204 (1) (b) (603 SE2d 723) (2004).

[34] *Gosnell*, supra at 686 (1).

[35] (Citation and punctuation omitted.) *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 835-836 (4) (446 SE2d 186) (1994).

[36] Mitchell did not move for summary judgment on this issue.

[37] See *Crews*, supra at 590.

[38] See *Evans Toyota*, supra at 319-320.

trial court at that time.[39] "If the denial of summary judgment is enumerated as error, OCGA § 5-6-34 (d) requires us to address that enumeration if it will affect the proceedings below. The issue of summary judgment is preserved for appeal in the posture of the evidence as it was when the motion for summary judgment was denied."[40] We turn to the issue of rescission.

On summary judgment, our review is de novo, and we view the evidence in the light most favorable to the nonmovant.[41] "Summary judgment is proper [only] when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[42] In this regard, the evidence before the trial court at the time Backus's motion was decided showed that factual issues remained both as to Backus's fraud and Mitchell's attempted tender of the vehicle. Mitchell deposed that he asked the Backus salesman whether the car had been wrecked, and the salesman said "no." Mitchell testified that he learned from the previous owner that the car had suffered front-end damage; that he would not have made the purchase had he known the car had been in a collision; and that he could not detect the problems that surfaced later at the time he bought the car. He further testified that he returned the car to Mr. Backus, who promised Mitchell another car. Moreover, he demanded a refund. Evidence that the car's collision damage had been repaired by Backus was shown. The evidence before the trial court, construed most favorably to Mitchell, sufficed to create a jury issue as to rescission. See Division 1 (b).

Backus contends that Mitchell's deposition testimony that he had electrical problems with the car before he put in the sunroof, for which he paid over $1,000, demands a finding, as a matter of law, that Mitchell elected to affirm the contract rather than rescind it. OCGA § 13-4-60 requires that a party seeking rescission "promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." But "[t]he question as to what is a reasonable or proper time within which to rescind a contract depends upon the facts of the particular case and is ordinarily a question for the jury."[43] Whether Mitchell acted promptly to rescind the contract is for a jury to decide. Finally, we hold that the affidavit of Backus's service manager, who described the collision damage as "very minor" and opined that it would not affect the mechanical operation of the vehicle, does not demand a

---

[39] *Weir*, supra at 836 (4).

[40] (Emphasis omitted.) Id.

[41] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[42] Id., citing OCGA § 9-11-56 (c).

[43] (Citations and punctuation omitted.) *Newton v. Burks*, 139 Ga. App. 617, 618 (3) (229 SE2d 94) (1976).

finding that Mitchell suffered no loss as a result of the misrepresentation. The trial court did not err in denying summary judgment to Backus on Mitchell's claim for rescission.

*Judgment affirmed in part, reversed in part and case remanded in part in Case No. A05A0326. Judgment affirmed in Case No. A05A0327. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 12, 2005 — 

*Murphy A. Cooper*, for appellant.
*Karsman, Brooks & Callaway, Stanley E. Harris, Jr.*, for appellee.