**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**April 21, 2014**

# In the Court of Appeals of Georgia

A14A0233. KRAYEV et al. v. JOHNSON.

BARNES, Presiding Judge.

This dispute over the purchase of a used car went to trial, and the jury returned a verdict in favor of the purchaser, David J. Johnson, Jr., and against the sellers, Sergey Krayev and Elite Motor Sports, LLC (collectively, "Krayev"). Among other things, the jury found that Johnson had rescinded the purchase agreement for fraud and awarded him $10,500 in actual damages and $12,500 in punitive damages. After the jury reached its verdict, the trial court conducted an evidentiary hearing and found that Johnson was entitled to $63,702.53 in attorney fees and expenses. Krayev now appeals from the trial court's entry of final judgment, contending that the court erred in denying his motion for a directed verdict on Johnson's claims for rescission and attorney fees. Krayev further contends that the trial court's award of attorney fees was improper because Johnson failed to show which fees were attributable solely to his rescission claim. For the reasons stated below, we affirm.

Following a jury verdict, we view the evidence "in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict." (Citation omitted.) *Moore v. Stewart*, 315 Ga. App. 388 (727 SE2d 159) (2012). So viewed, the evidence shows that on August 26, 2011, Johnson purchased a used BMW from Krayev. The purchase agreement signed by the parties provided that Johnson would make a down payment of $10,000 and 20 monthly payments of $753.61 beginning in October 2011. The purchase agreement also included a merger clause that stated: "This Agreement constitutes the entire agreement and understanding between the parties and there are no other representations, agreements or understandings by or between the parties."

Before the parties signed the purchase agreement, Krayev told Johnson that he owned Elite Motor Sports, which he said "dealt in high end cars." Krayev also gave Johnson an emissions inspection report for the BMW from July 2011 that showed that the car had passed its most recent emissions test. Krayev assured Johnson that the BMW was in "great condition" and discouraged him from consulting with an independent mechanic because he "had just had the car checked out." Krayev further assured Johnson that although he did not have the certificate of title to the BMW with him, he would deliver it to Johnson the next day. Based on his conversation with

Krayev, Johnson signed the purchase agreement, paid the $10,000 down payment to him, and took possession of the BMW.

Immediately following the sale, Johnson bought new tires and rims for the BMW. Hours later, the BMW broke down, and Johnson had the car towed to his house. The next day, Johnson had an emissions inspection performed on the BMW and had two automobile repair shops inspect the car. The BMW failed the emissions test and was diagnosed with a defective transmission and catalytic converter. Johnson obtained an estimate from one of the repair shops indicating that it would cost between $4,500 and $6,000 for a transmission "overhaul." Moreover, Krayev failed to deliver the certificate of title to Johnson that day as he had promised.

Johnson called Krayev to discuss the problems with the BMW, but Krayev did not answer the phone or return his voice message. Unable to reach Krayev by phone, Johnson wrote a letter to Krayev and Elite Motor Sports on August 28, 2011 that described the problems with the BMW and requested that Krayev agree to pay for all of the necessary repairs. Johnson's letter further stated: "If I can't have all [of] these problems corrected, I want a full refund of my down payment and would like to terminate our contract[.]" Johnson also hired an attorney, who wrote a second letter

to Krayev regarding the BMW. Additionally, Johnson tried to stop payment on the check for $10,000 that he had written to Krayev, but the check had already cleared.

Krayev called Johnson in response to the two letters. Johnson "asked him to take the car back" and return his down payment of $10,000 if he would not repair the car, but Krayev refused. Krayev was upset that Johnson had hired an attorney and told him, "This is not Wal-Mart, so you can't just return things, you know, if they don't work properly." Consequently, Johnson continued driving the BMW.

During September 2011, the BMW would drive normally for a few days before breaking down. Johnson had the car towed three times that month and paid for several additional repairs, but not the expensive repairs needed to correct the transmission and catalytic converter. Furthermore, because Krayev never provided him with the certificate of title, Johnson was unable to get a permanent license tag for the car or obtain insurance during this time period. Finally, in late September 2011, Johnson stopped driving the BMW altogether. He made the first monthly payment of $753.61 in October 2011 but then refused to make any additional payments in light of the problems with the car.

Johnson had several conversations with Krayev about the problems with the BMW in an effort to resolve the matter before the instant lawsuit was filed. During

4

these conversations, Johnson offered to return the BMW in exchange for a refund of his money. But Krayev refused to give Johnson his money back while at the same time refusing to pay for any repairs to the car. Instead, Krayev demanded that Johnson unconditionally return the BMW to him because Johnson had stopped making the monthly payments, but Johnson refused to return the car until Krayev refunded his purchase money.

In December 2011, Johnson, who was no longer represented by counsel, filed suit *pro se* in the Fulton County Magistrate Court against Krayev, alleging in his Statement of Claim that the purchase agreement was "illegal," that the parties had engaged in a "failed transaction," and that Krayev had improperly refused to refund his $10,000 down payment. Krayev removed the case to superior court and asserted counterclaims against Johnson for trover, conversion, breach of the purchase agreement, trespass to chattel, unjust enrichment, attorney fees, and punitive damages and asked the court to issue a writ of possession. In August 2012, the superior court issued a writ of possession against Johnson, who then returned the car to Krayev.

In October 2012, Johnson retained new counsel to represent him in the litigation, and the following month, his counsel filed an amended complaint that added Elite Motor Sports as a defendant and added several claims, including claims

for breach of implied and express warranties, fraud, negligent misrepresentation, violation of the Fair Business Practices Act (the "FBPA"), attorney fees and expenses under OCGA § 13-6-11, and punitive damages.[1] In December 2012, Johnson's counsel filed a second amended complaint, formally adding claims for breach of the purchase agreement and, alternatively, for rescission of the agreement based on fraud.

The case subsequently was tried before a jury, and Johnson testified to the events as discussed above. Johnson also introduced evidence reflecting that the July 2011 emissions inspection report provided to him by Krayev was fraudulent. Specifically, Johnson presented evidence that Krayev obtained the report by paying an emissions station to hook up a "surrogate vehicle" to the emissions machine and manually enter the BMW's vehicle identification number ("VIN") into the database. As a result, the report showed the surrogate car's passing emissions results, but contained the BMW's VIN. The emissions station used by Krayev was later shut down for issuing 44 similar fraudulent reports in little more than a month.

After Johnson presented his case-in-chief, Krayev moved for a directed verdict on, among other things, Johnson's fraud claim for rescission and his claim for

---

[1] The amended complaint also added a claim for intentional infliction of emotional distress that was later dismissed. Mani Chilpayen, Krayev's business partner, was added as a defendant but was later voluntarily dismissed from the case.

attorney fees and expenses under OCGA § 13-6-11. The trial court denied the motion. The trial court further ruled that the issue of attorney fees would be addressed in two phases: if the jury found in the first phase of the trial that attorney fees should be awarded for bad faith, stubborn litigiousness, or causing unnecessary trouble and expense, the amount of fees would then be determined in a separate phase either by the jury or by the court.

After the trial court denied his motion for a directed verdict, Krayev testified and denied obtaining a fraudulent July 2011 emissions inspection report for the BMW, denied making any misrepresentations to Johnson about the condition of the car, and denied knowing of the major mechanical problems with the BMW before selling the car to Johnson. However, Krayev testified that "he didn't really have a company" called Elite Motor Sports, which had simply been "created through a website" and was "never an actual dealership or anything of that nature" and had never sold any cars. Krayev also testified that he had owned the BMW personally, that he had kept the certificate of title to the BMW, and that the title in fact had a prior lien on it at the time he sold the car to Johnson. While denying that he knew the July 2011 emission inspections report was fraudulent, Krayev conceded that he had obtained the report and had driven 40 miles from his house to get it, even though

7

there was another emissions station only 3.3 miles from where he lived. Additionally, despite testifying that he never had a problem with the transmission before the sale date, Krayev testified at another point that he "vaguely" remembered reimbursing someone to have part of the transmission worked on before the BMW was sold to Johnson.

After hearing all of the evidence, the jury found in a special verdict form that Johnson had "rescinded the sales contract for fraud." The jury awarded Johnson $10,000 in actual damages on his fraud claim for rescission and $12,500 in punitive damages. The jury also found that Krayev had "committed fraudulent concealment during the sale of the vehicle," had breached the purchase agreement, and had "breached a warranty" to Johnson "because of representations made concerning the vehicle," but awarded Johnson zero damages on his fraudulent concealment, breach of contract, and breach of warranty claims. The jury found in favor of Krayev on Johnson's FBPA claim, and found in favor of Johnson on all of Krayev's counterclaims. Finally, the jury found that Johnson was entitled to attorney fees and expenses because Krayev had acted in bad faith, been stubbornly litigious, and had caused Johnson unnecessary trouble and expense. Later, after conducting an evidentiary hearing on the amount of attorney fees and expenses, the trial court

8

entered a detailed order granting Johnson $63,702.53 in fees. The trial court entered final judgment in favor of Johnson, and this appeal followed.

1. Krayev first contends that the trial court erred in denying his motion for a directed verdict on Johnson's rescission claim for fraud because the uncontroverted evidence showed that Johnson waived his right to rescind the purchase agreement and instead elected to affirm the contract. According to Krayev, because Johnson did not timely and properly exercise his right to rescind, his fraud claim failed as a matter of law in light of the merger clause contained in the purchase agreement. See generally *Novare Group v. Sarif*, 290 Ga. 186, 190 (3) (718 SE2d 304) (2011) ("Where a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract."). We are unpersuaded.

OCGA § 13-4-60 provides: "A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." But a party "need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so would be unreasonable."

9

(Footnote omitted.) *Mitchell v. Backus Cadillac-Pontiac*, 274 Ga. App. 330, 334 (2) (618 SE2d 87) (2005). Furthermore, "the question as to what is a reasonable or proper time within which to rescind a contract depends upon the facts of the particular case and is ordinarily a question for the jury." (Punctuation and footnote omitted.) Id. at 340 (9). And, more generally, in reviewing the denial of a motion for a directed verdict, we must construe the evidence with every inference in favor of the party that prevailed at trial, and we will affirm the trial court's ruling if there is any evidence to support it. *Lee v. Swain*, 291 Ga. 799, 800 (1) (733 SE2d 726) (2012).

Johnson testified that he repeatedly told Krayev that he would return the BMW in exchange for the return of his purchase money, but Krayev refused. Johnson also introduced into evidence the August 28, 2011 letter indicating his desire to return the BMW in exchange for a refund of his down payment. Moreover, Krayev himself testified that he had "a lot of conversations" with Johnson in which Johnson offered to return the BMW in exchange for his money back. In light of this evidence, we conclude that Johnson made a sufficient "offer to restore" to support a claim for rescission pursuant to OCGA § 13-4-60. See *Mitchell*, 274 Ga. App. at 335 (2) (sufficient evidence to support rescission claim where "there is evidence that the buyer attempted to return the vehicle but the seller refused to accept it"). See also

10

*Southern R. Co. v. Lawson*, 256 Ga. 798, 800 (1) (b) (353 SE2d 491) (1987) (jury authorized to find in favor of plaintiffs on their claim that release agreement had been timely and properly rescinded, where the plaintiffs offered to return the money that they had received from the defendant, but the defendant refused the money and "clearly indicated it considered the release a valid agreement and would not agree to rescission or cancellation").

Krayev argues that Johnson's actions were unreasonable and could not support a finding of rescission because Johnson conditioned his return of the BMW on receiving a refund of the purchase price from Krayev.[2] However, we have held that where, as here, a defrauded buyer "attempted to return the vehicle and demanded a refund of the purchase price" but the seller refused, "the buyer . . . made a sufficient

_____

[2] We also note that Krayev testified at trial that Johnson refused to allow him to inspect the BMW and implied that Johnson had disabled a GPS device that had been on the car in an effort to hide the car from him. However, the jury was entitled to find that Krayev's testimony was not credible in light of the other evidence at trial indicating that Krayev had defrauded Johnson. See generally *Fuller v. Flash Foods*, 298 Ga. App. 217, 219 (1) (679 SE2d 775) (2009) ("Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness.") (citation, punctuation, and footnote omitted); *Taylor v. Taylor*, 288 Ga. App. 334, 338 (2) (654 SE2d 146) (2007) ("Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact.") (citations, punctuation, and footnote omitted).

11

'offer to restore' within the meaning of OCGA § 13-4-60 in order to claim the remedy of rescission." *Mitchell*, 274 Ga. App. at 335 (2). A buyer does not have to return the car if the seller refuses to give the buyer his money back because "[t]he rule requiring return or tender of the goods can be applied only where it is equitable; it was not meant to give the defrauding party an advantage at the expense of the defrauded purchaser." (Citation and punctuation omitted.) *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589, 591 (1) (411 SE2d 518) (1991). Thus, it was within the province of the jury to find that Johnson made a sufficient offer to restore to assert a claim for rescission based on fraud.

Krayev also argues that Johnson's use of the car, repairs to the car, and first monthly payment show that he affirmed the purchase agreement as a matter of law. We disagree. The evidence showed that Krayev continued to drive the BMW for approximately one month after the initial purchase, made some repairs to the car in September 2011 other than the expensive repairs needed to correct the transmission and catalytic converter problem, and made the first monthly payment in October 2011 before refusing to make any more monthly payments.

We conclude that Johnson's limited use of the car, repairs to the car, and first monthly payment did not *demand* a finding that he had waived his rescission claim

12

and had elected to affirm the purchase agreement, particularly in light of Krayev's ongoing refusal to accept Johnson's offer to return the BMW in exchange for his purchase money. Hence, it was for the jury to decide whether Johnson's actions waived his right to seek the remedy of rescission. See *Mitchell*, 274 Ga. App. at 340 (9) (concluding that jury should decide whether the buyer had elected to affirm the vehicle purchase agreement by paying $1,000 to install a sunroof on the car after learning of the car's electrical problems); *Lanier Home Center v. Underwood*, 252 Ga. App. 745, 746 (2) (557 SE2d 76) (2001) (directed verdict properly denied on rescission claim where buyers used the property while continuing to demand that seller "reverse the transaction"); *Neal Pope, Inc. v. Garlington*, 245 Ga. App. 49, 53-54 (2) (537 SE2d 179) (2000) (trial court properly denied summary judgment to seller on buyer's rescission claim, where after seller refused to buy the car back, buyer continued to drive car for a few months until it was repossessed and made a few additional monthly payments before stopping payment altogether). Compare *Small v. Savannah Intl. Motors*, 275 Ga. App. 12, 13, 14 (2) (619 SE2d 738) (2005) (trial court properly granted summary judgment to seller on buyers' rescission claim, where buyers were still driving the car and making installment loan payments during the litigation); *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 380 (436

13

SE2d 94) (1993) (trial court properly granted summary judgment to seller on buyer's rescission claim, where, among other things, buyer "continued to make monthly payments on the car" and "drove it extensively, even on out-of-town trips, putting almost 40,000 miles on the car" over the course of two years).

Krayev further argues that because Johnson did not expressly plead a claim for rescission until his second amended complaint, he waived his rescission claim as a matter of law. See, e.g., *Megel v. Donaldson*, 288 Ga. App. 510, 515 (3) (654 SE2d 656) (2007); *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 146-147 (3) (524 SE2d 790) (1999). Again, we disagree.

Johnson's original complaint – his *pro se* Statement of Claim filed in the magistrate court – alleged that the purchase agreement was "illegal," that the parties had engaged in a "failed transaction," and that Krayev had improperly refused to refund his $10,000 down payment. While Johnson did not use the legal term "rescission," the language in his Statement of Claim can reasonably be construed as a layperson's attempt to assert a claim for rescission of the purchase agreement, especially when viewed in conjunction with the fact that Johnson had repeatedly sought to return the BMW to Krayev in exchange for his purchase money before

14

filing suit, and ultimately amended the complaint to expressly include a rescission claim after he hired counsel. Under these circumstances, we cannot say that Johnson waived his rescission claim as a matter of law. See *Conway v. Romarion*, 252 Ga. App. 528, 531-532 (1) (557 SE2d 54) (2001) (plaintiffs did not waive rescission claim although their original complaint did not explicitly assert a claim for rescission, where the fraud claim as stated in the original complaint could be read to "support a claim of rescission," and the plaintiffs asserted their intent to rescind in a timely fashion before filing their action). Compare *Weinstock v. Novare Group*, 309 Ga. App. 351, 353-356 (1) (b) (710 SE2d 150) (2011) (plaintiffs waived rescission claim where their original complaint did not include a rescission claim, the plaintiffs did not attempt to rescind the purchase contract before filing suit, and even their complaint as amended did not "formally" or "expressly" assert a rescission claim).

Lastly, relying on the doctrines of res judicata and collateral estoppel, Krayev argues that "[t]he trial court conclusively determined that the [c]ontract was enforceable" and was not subject to rescission by issuing the writ of possession requiring Johnson to return the BMW to Krayev in August 2011.

> We find no mention of this argument in [Krayev's] motion[] for directed verdict. "A motion for a directed verdict shall state the specific grounds

15

therefor." OCGA § 9-11-50 (a). A failure to move for a directed verdict on a specific ground precludes review of that decision on appeal, although the appealing party may seek a new trial on this ground. [Krayev,] however, does not seek a new trial on appeal; [he] seeks remand for the entry of judgment in [his] favor on this point. Therefore, this ground of appeal is not properly before us.

*Rowe v. Law Offices of Ben C. Brodhead, P.C.*, 319 Ga. 10, 17 (3) (735 SE2d 39) (2012) (citation omitted).

In any event, "[t]he doctrines of res judicata and collateral estoppel both require an adjudication on the merits by a court of competent jurisdiction in a *prior action* between the same parties or their privies." (Emphasis supplied.) *Gajaanan Investment, LLC v. Shahil & Sohail Corp.*, 323 Ga. App. 694, 696 (1) (747 SE2d 713) (2013). But the writ of possession was issued by the trial court in the *present action*, was interlocutory in nature, and when viewed in the context of the litigation as a whole, was clearly not intended by the court to conclusively determine whether Johnson was entitled to pursue a claim for rescission based on fraud. See generally *Hudson v. Godowns*, 320 Ga. App. 157, 159 (2) (739 SE2d 462) (2013) ("An order adjudicating fewer than all the claims is not final[] . . . and is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and

16

liabilities of all the parties.") (citation and punctuation omitted). Accordingly, Krayev's final argument is without merit.

For these combined reasons, the trial court committed no error in denying Krayev's motion for a directed verdict on Johnson's rescission claim. It was for the jury to decide whether Johnson made an offer to rescind the purchase agreement that was timely and reasonable.

2. Krayev next contends that the trial court erred in denying his motion for a directed verdict on Johnson's claim for attorney fees and expenses because Johnson failed to present any evidence before the jury in his case-in-chief regarding the amount of fees and expenses that should be awarded to him. As previously noted, the jury found that attorney fees were warranted in its special verdict form and the trial court then determined the amount of fees after conducting a separate evidentiary hearing on that issue. However, according to Krayev, the jury was required to determine the amount of attorney fees awarded under OCGA § 13-6-11, and thus Johnson's failure to present any evidence about the amount of fees to the jury in his case-in-chief was fatal to his claim. We disagree.

As an initial matter, the decision whether to bifurcate a trial is within the discretion of the trial court. See *Paine v. Nations*, 283 Ga. App. 167, 168-169 (1) (641

17

SE2d 180) (2006). We discern no abuse of discretion in the trial court's decision to bifurcate the trial and have the amount of attorney fees determined in a separate, second phase of the trial proceedings.

The next issue is whether the trial court was authorized to determine the amount of attorney fees in the second phase rather than have the jury make that determination. We conclude that under the circumstances of this case, the trial court properly decided the issue rather than the jury. In its order addressing attorney fees, the trial court expressly found that during the course of the trial, the parties had agreed to have the trial court rather than the jury determine the amount of fees that would be awarded.

The record as it exists before us does not show that Krayev ever agreed to have the trial court determine the amount of fees. Significantly, however, the trial transcript that was transmitted on appeal includes all of the witness testimony but ends after the defense rests.[3] Thus, the transcript is incomplete in that it contains none of the proceedings that occurred after that point, including any dialogue between the trial court and counsel that may have occurred at that time. In light of this incomplete

---

[3] A supplemental transcript later transmitted to this Court includes only a copy of the jury charges read to the jury.

18

record, we must presume that the trial court's factual finding that Krayev agreed at some point during the trial to have the court decide the amount of fees was correct. See *Hodge v. Lott*, 251 Ga. App. 288, 290 (1) (553 SE2d 652) (2001) ("When a portion of the record is not before this court which is necessary for our determination of one or more of the appellate issues raised, an affirmance as to those issues must result.") (citations and punctuation omitted). Consequently, we must conclude that Krayev's appellate argument that the jury had to decide the amount of attorney fees was waived by his agreement to have the trial court decide that issue. See *Lamb v. Javed*, 303 Ga. App. 278, 280 (1) (692 SE2d 861) (2010) (party who acquiesces to a trial court's ruling cannot later complain on appeal).

3. Lastly, Krayev contends that the trial court's award of attorney fees and expenses under OCGA § 13-6-11 was improper because Johnson failed to show which fees were attributable solely to his rescission claim. Krayev notes that the jury found in his favor on Johnson's FBPA claim; that Johnson's claims for intentional infliction of emotional distress and his claims against Mani Chilpayen were dismissed; and that the jury awarded zero damages to Johnson on his claims for fraudulent concealment, breach of contract, and breach of warranty. As such, Krayev

19

argues that Johnson prevailed only on his rescission claim and thus was required to exclude all fees and expenses related to the other claims.

The general rule is that an award of attorney fees "must be apportioned to those . . . fees attributable to claims on which the plaintiff prevailed." (Citations and punctuation omitted.) *Fowler's Holdings, LLLP v. CLP Family Investments, L.P.*, 318 Ga. App. 73, 75 (2) (732 SE2d 777) (2012). See *Monterrey Mexican Restaurant of Wise v. Leon*, 282 Ga. App. 439, 452 (6) (d) (638 SE2d 879) (2006). But there is an exception to this rule ignored by Krayev: if the trial court finds that the various "claims are so similar that it would be too difficult to separate the hours spent on each," the plaintiff is not required to allocate his hours between his successful and unsuccessful claims. *Campbell v. Beak*, 256 Ga. App. 493, 498 (5) (568 SE2d 801) (2002). See *Huggins v. Chapin*, 233 Ga. App. 109, 110 (503 SE2d 356) (1998) (indicating that trial court would be entitled to find that the plaintiff's successful and unsuccessful claims were "intertwined" and then base its attorney fees award "on the interwoven nature of the claims," but remanding so court could detail how it arrived at its fees ruling). Moreover, we will affirm the trial court's award of attorney fees if there is any evidence to support it. *Vol Repairs II, Inc. v. Knighten*, 322 Ga. App. 416, 419 (1) (a) (745 SE2d 673) (2013).

Here, Johnson sought $90,510.17 in attorney fees and expenses, but in a detailed order, the trial court reduced that amount to $63,702.53 after, among other things, omitting time Johnson spent solely on his unsuccessful FBPA claim and his dismissed claims. The trial court further found that Johnson's time spent on his claims for fraudulent concealment, breach of contract, and breach of warranty, as well as a portion of his time spent on his FBPA claim, "arose out of the same operative facts" and were "inextricably intertwined" with his claim for rescission, such that Johnson was not required to separate his time spent on these claims from his time spent on his rescission claim.

On appeal, Krayev does not focus on the trial court's order and instead makes the general argument that Johnson was required to separate his time spent on his rescission claim from his other claims. Krayev glosses over the fact that the trial court omitted from its fees award the time that Johnson spent solely on his unsuccessful FBPA claim and his dismissed claims, and fails to point to any specific errors made by the trial court in the manner in which it reduced the amount of fees sought by Johnson. Furthermore, Krayev fails to provide any argument explaining how or why the trial court erred in its finding that Johnson's time spent on his claims for fraudulent concealment, breach of contract, and breach of warranty, as well as a

portion of his time spent on his FBPA claim, was inextricably interwoven with his rescission claim. Under these circumstances, Krayev has failed to show that the trial court committed any reversible error in its award of attorney fees and expenses. See *Campbell*, 256 Ga. App. at 498 (5); *Huggins*, 233 Ga. App. at 110. See generally *Smith v. Montgomery County Bd. of Tax Assessors*, 268 Ga. App. 177, 180 (2), n. 14 (601 SE2d 386) (2004) (appellate courts will not reverse a ruling by the trial court if the appellant fails to make a cogent argument challenging it).[4]

*Judgment affirmed. Boggs and Branch, JJ., concur.*

---

[4] As noted above, Krayev argues that because the jury awarded Johnson zero damages on his claims for fraudulent concealment, breach of contract, and breach of warranty, Johnson was not a prevailing party on those claims. Given that the trial court found that those claims were inextricably interwoven with Johnson's rescission claim and Krayev has failed to show any error in that ruling, we need not resolve whether Johnson was a prevailing party on those claims.