[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 17-13617; 17-14426
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00010-LGW-RSB

INTERNATIONAL AUTO LOGISTICS, LLC,

Plaintiff-Counter Defendant -
Appellee,

versus

VEHICLE PROCESSING CENTER OF FAYETTEVILLE, INC.,

Defendant-Counter Claimant -
Appellant,

BRETT HARRIS, et al.,

Defendants.

_____

Appeals from the United States District Court
for the Southern District of Georgia
_____

(June 1, 2018)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

In this breach of contract dispute, defendant Vehicle Processing Center of Fayetteville, Inc. ("VPCF") appeals from various orders of the district court, which granted plaintiff International Auto Logistics, LLC's ("IAL") motion for summary judgment, its motion for attorney's fees and costs, and its motion for an amended judgment to offset competing awards. After careful review of the record and the briefs, we affirm those orders and the entry of final judgment in favor of the plaintiff IAL in the amount of $19,965.82 against the defendant VPCF.

## I.    BACKGROUND

### A.    The GPC III Contract

Plaintiff IAL is a government contractor that provides shipping and delivery services. In early 2013, IAL began competing for a government contract known as the "GPC III Contract." The GPC III Contract involved shipping and storing privately owned vehicles for eligible military service members and Department of Defense civilian employees. In preparing its bid, IAL approached several subcontractors, including defendant VPCF, about providing vehicle-processing and -storage services under the GPC III Contract. IAL and VPCF eventually agreed that, if IAL was awarded the contract, VPCF would operate a vehicle-storage facility in South Carolina as a subcontractor for IAL.

2

In October 2013, the government notified IAL that its proposal was selected for the GPC III Contract.

## B.    The Subcontractor Agreement

Consequently, IAL entered into a Subcontractor Agreement with VPCF to operate a vehicle storage facility (the "Agreement").  On March 28, 2014, VPCF executed the Agreement, and on April 9, 2014, IAL executed it too.  The Agreement set forth VPCF's duties and responsibilities in Exhibit A and VPCF's compensation in Exhibit B.  The Agreement did not permit amendments without the express written authorization of both parties.

As to duties, VPCF was required to "[p]erform the necessary functions to establish, staff and operate" a vehicle-storage facility.  Likewise, VPCF was required to comply with federal law, including applicable "labor practices and wage determinations."

As to costs, the Agreement provided that "[e]ach party shall bear all costs, expenses, risks and liabilities incurred by it arising out of or relating to its obligations, efforts or performance."  The Agreement also stated that VPCF would handle "[a]ll necessary cost to fulfill [its] obligations" under the Agreement.

As to compensation, the Agreement provided that "[n]either party shall have any right to any reimbursement, payment or compensation of any kind from the other," except as provided in Exhibit B or by consent of the parties.  In turn,

3

Exhibit B to the Agreement set forth the amounts for VPCF's compensation in a rate schedule dated April 9, 2014. With respect to vehicle storage, IAL agreed to pay VPCF a monthly per-vehicle rate that accounted for VPCF's costs of operation. Exhibit B's rate schedule listed the costs that the parties expected VPCF to pay, which included, inter alia, facility leasing, utilities, labor, supplies, and other costs. The Agreement required that IAL pay VPCF within five business days of when IAL received payment from the government.

As to termination, if VPCF failed to perform or "endanger[ed] performance of the GPCIII contract," the Agreement permitted IAL to terminate after a notice of default and a ten-day period for VPCF to cure. If the Agreement was terminated for VPCF's default, the Agreement entitled IAL to "excess costs to remediate damages caused by [the] default." Likewise, "[i]n any action initiated by either party" for injunctive relief or "otherwise to prevent irreparable harm," the Agreement entitled the prevailing party to recover expenses, including reasonable attorney's fees.

## C.     Incumbent-Contractor Protest and the Chester Facility

Shortly after the government notified IAL that it was selected for the GPC III Contract, the then-incumbent contractor protested the award to IAL by filing with the Government Accountability Office. Pending resolution of this protest, the government stayed IAL's performance under the GPC III Contract. During this

4

time, IAL attempted to find a suitable location for VPCF's vehicle storage facility, but both IAL and VPCF were cautious not to sign a lease until the government approved IAL's contract award.  On May 1, 2014, after the previous contractor's protest ended, the government directed IAL to begin performance.

But, by the time this occurred, many of the locations previously identified for VPCF's vehicle-storage facility were no longer available.  Eager to begin the GPC III Contract, and facing limited options, IAL chose a facility in Chester, South Carolina for VPCF's operation (the "Chester Facility").

As stated above, under Exhibit B and the Agreement generally, VPCF was expected to lease the facility for its vehicle storage operation.  However, when VPCF attempted to lease the Chester Facility, the landlord insisted on a thorough and lengthy vetting process, and, in any event, VPCF did not have the funds to post the security deposit.  Because of the delay already suffered, IAL ended up leasing the Chester Facility with the understanding that the leasing costs would be offset from VPCF's compensation, which accounted for these costs.  On May 1, 2014, VPCF began performing under the Agreement.

**D.    VPCF's Labor Violation, IAL's Cure Notice, and VPCF's Response**

In September 2014, IAL discovered that VPCF was not performing all of the required maintenance on stored vehicles and was not paying its employees consistent with federal law.  VPCF maintained that the condition of the Chester

5

Facility made it impossible to store vehicles properly and that this also resulted in financial issues that complicated VPCF's operation.

On October 9, 2014, IAL sent VPCF a cure notice, indicating that VPCF was acting in violation of provisions of federal labor law. Specifically, the notice stated that a VPCF employee had reported that VPCF was not paying its employees on time, not allowing employees to cash their checks, not keeping sufficient funds to clear payroll checks, not providing health and welfare benefits, and not paying the applicable minimum wage, including a legally mandated fringe benefit. The cure notice also stated that IAL felt VPCF's conduct was "a condition that is endangering the performance of the [GPC III] contract" and warned that VPCF had ten days to cure these allegations before IAL terminated the Agreement for VPCF's default.

IAL's cure notice also advised VPCF of deficient performance in its vehicle-storage operation, including insufficient personnel, improper training, falsifying maintenance records, and a lack of resources and supplies to perform the necessary maintenance. IAL concluded its cure notice by explaining, in great detail, how VPCF could become compliant under the Agreement and by giving notice that one of IAL's representatives, Rod Mallette, would visit the Chester Facility on October 23, 2014 to discuss VPCF's progress.

On October 17, 2014, VPCF responded to IAL's cure notice with its own letter. VPCF's response letter admitted that the unpaid fringe benefits were an oversight on its part and that there was some delay in the July 2014 payroll. VPCF claimed that the other payment allegations were "an isolated incident from one employee who resigned his position within 2 months of employment." VPCF's response letter avowed that it had "always been [VPCF's] position to be in compliance with every area of the business." It also addressed each specific allegation by IAL and listed what VPCF had done so far to ensure its compliance.

**E.    Continued Correspondence and IAL's Show Cause Letter**

IAL continued to monitor VPCF's conduct and later learned that, despite its response letter, VPCF had not addressed many of the issues contained in IAL's cure notice. In his deposition, Terry Johnson, the President of VPCF, admitted that VPCF's payroll was not being paid on time by August 2014 and that some of VPCF's employees had been asked not to cash their pay checks. Yet, Johnson claimed that this was the result of IAL's failure to pay VPCF. IAL maintained that, even though it had not received payment from the government, IAL had paid VPCF $544,934.36 to assist with VPCF's cash flow problems.

On November 4, 2014, IAL sent VPCF a show cause letter regarding its response to IAL's cure notice. IAL's show cause letter indicated that VPCF's response had "fail[ed] to address some of the primary areas of concern" and that its

7

plan for compliance was incomplete.  The IAL letter warned that VPCF employees should not be subject to retribution for reporting issues to IAL and also indicated that, during his visit in late October 2014, IAL's representative had noted continuing concerns that were discussed in IAL's cure notice.  IAL's show cause letter concluded that IAL was considering termination of the Agreement and that VPCF had ten days from receipt of the November 4, 2014 letter to present mitigation evidence regarding its failures to perform.

On November 14, 2014, VPCF responded to IAL's show cause letter, indicating every step it had taken to correct the issues mentioned in IAL's cure notice.  As to the wage issues, VPCF stated that it had notified each employee of its errors, issued new job offer letters explaining the change, notified employees of payment, and self-disclosed VPCF's oversight with the Department of Labor's regional office in Raleigh, North Carolina.  With respect to performance, VPCF listed several ways it was attempting to correct its vehicle-maintenance and storage policies.

## F.    Termination of the Agreement and Payment Dispute

On December 3, 2014, IAL sent VPCF a notice of termination, effective December 5, 2014.  This termination notice stated that IAL would pay VPCF on a pro-rata basis for the monthly per-vehicle rate, which was set forth in Exhibit B of the Agreement, less any excess costs incurred by IAL as a result of VPCF's default

8

in performance.  In a separate letter sent that same day, IAL identified the reasons why it was terminating the Agreement.  Those reasons included continued complaints by employees about payroll and VPCF's noted failures to perform in maintenance, recordkeeping, and training.  Two days later, IAL took over operation of the Chester Facility.

After termination of the Agreement, IAL attempted to negotiate a payout with VPCF by calculating VPCF's gross revenue earned ($907,172.17) and offsetting that amount against IAL's prior payments ($544,934.36) and the amounts IAL had paid on VPCF's behalf to third parties ($305,791.23).  The amount paid on VPCF's behalf included IAL's payment of the lease rent for the Chester Facility, as well as utility costs, vehicle-repair costs, landscaping, wireless radios, and the installation of an electronic gate at the Chester Facility.  Based on its calculations and the offset, IAL offered to pay VPCF $56,446.58 to conclude their dealings.  VPCF rejected IAL's calculations, including the offset costs.  VPCF claimed that IAL previously had promised to pay VPCF a fixed percentage of the entire amount that IAL would receive from the government for vehicle storage under the GPC III Contract, which amounted to several million dollars more than IAL's suggested calculations.[1]

---

[1]The parties' briefs on appeal redacted this fixed percentage from the public file but included it in the copies filed under seal.  As such, we refer to a "fixed percentage" instead of using the actual number of the percentage.

During these negotiations, IAL began receiving harassing emails and correspondence from a consultant, Brett Harris, who purported to represent VPCF's interests.  When intimidation of IAL apparently failed, Harris began a smear campaign by lodging anonymous complaints against IAL in various state agencies, contacting IAL's federal-government customer contact, and threatening IAL employees with legal action.

## G.    IAL's Complaint

On January 15, 2016, IAL filed this lawsuit against defendants VPCF, Brett Harris, and Brett Harris Consulting.  IAL sought a declaratory judgment as to the amount it owed VPCF and asserted claims for tortious inference, tortious coercion, and deceptive trade practices against all three defendants.  IAL alleged, inter alia, that—as a result of the dispute over money owed under the Agreement—VPCF had hired Brett Harris to harass IAL and interfere with IAL's industry relationships.  Aside from a declaration as to the amount owed to VPCF, IAL also sought compensatory and punitive damages, a permanent injunction against all three defendants, and costs and attorney's fees.

On March 11, 2016, VPCF answered IAL's complaint and filed a counterclaim.  In its counterclaim, VPCF alleged a claim for breach of contract against IAL and sought damages of not less than $2,000,000.00, plus reasonable attorney's fees.  Defendants Brett Harris and Brett Harris Consulting failed to

answer IAL's complaint and went into default, and thus the district court entered a permanent injunction against them.

IAL later stipulated to the dismissal of the harassment-based tort claims against VPCF. This left two claims in the case: (1) IAL's declaratory judgment action against VPCF claiming that IAL owed VPCF only $56,446.58 under the terminated Agreement; and (2) VPCF's counterclaim seeking damages in excess of $2,000,000.00 for IAL's breach of the Agreement.

## H.    IAL's Motion for Summary Judgment

On October 31, 2016, IAL moved for summary judgment against VPCF as to both IAL's declaratory judgment action and VPCF's counterclaim. Relevant to this appeal, IAL argued that: (1) VPCF breached the Agreement by failing to pay its employees consistent with federal law, by failing to cure this deficiency within the time period in the Agreement, and by failing to perform required maintenance on all stored vehicles; (2) IAL did not breach the Agreement by terminating VPCF for default after 30 days of VPCF's failure to cure; and (3) IAL correctly calculated the maximum amount due to VPCF by subtracting the costs IAL incurred on VPCF's behalf from VPCF's monthly per-vehicle rate under the Agreement. IAL contended that the maximum amount possibly due to VPCF was

11

$59,446.58, which reflected a $3,000 adjustment for lawn care services that IAL

no longer sought to offset from VPCF's compensation.[2]

In its response brief, VPCF recounted deposition testimony but simply

argued that IAL had failed to show that it was entitled to summary judgment.

## I.    District Court's Order on Summary Judgment

On May 16, 2017, the district court granted summary judgment in favor of

IAL and found that IAL had correctly calculated the amount ($59,446.58) it owed

VPCF under the Agreement.

The district court first determined that VPCF had breached the Agreement.

In more detail, the Agreement required VPCF's compliance with federal law, and

any failure to comply with federal law authorized IAL to terminate the Agreement

for default after giving VPCF ten days to cure.  Under federal law, the Service

Contract Act, 41 U.S.C. § 6701 et seq., requires contractors engaged in

government service contracts to pay certain fringe benefits to their employees.  See

41 U.S.C. § 6703(2).  The district court found that VPCF had admittedly failed to

provide these benefits to its employees and did not correct the issue within the time

prescribed by the Agreement.

Next, the district court reviewed IAL's calculations for the amount owed to

VPCF and found that they were "undisputedly proper."  Specifically, the

---

[2]IAL's complaint alleged the amount due VPCF was $56,446.58, but without the lawn
care offset, the amount became $59,446.58.

12

Agreement identified Exhibit B as the sole basis for any party's right to "reimbursement, payment or compensation of any kind," and Exhibit B set forth a monthly rate schedule for VPCF's compensation.  The amounts in the rate schedule took into account the various costs that VPCF was obligated to pay under the Agreement.

The district court found that the language of the Agreement was clear and unambiguous as to this rate schedule, and thus it rejected VPCF's unsupported contention that it was entitled to a fixed percentage of IAL's revenue for vehicle storage under the GPC III Contract (which percentage represented nearly all of IAL's revenue).  The district court explained: (1) that VPCF's total compensation was based on a monthly per-vehicle rate; (2) that the reference to a fixed percentage in the rate schedule was not to IAL's compensation from the government, but rather was to a breakdown of VPCF's own compensation; and (3) that the fixed percentage represented what percent of VPCF's total compensation was for vehicle storage and what percent was for administrative processing.

With respect to the amounts IAL paid on VPCF's behalf to lease and operate the Chester Facility, the district court found that IAL had properly offset these amounts against what IAL owed VPCF in compensation.  In the event of a termination for default, the Agreement permitted IAL to recover excess costs

13

caused by VPCF's default.  To that end, IAL sought leasing and utility costs it had paid at the Chester Facility, which the district court found were costs assigned to VPCF under the Agreement and were built into VPCF's compensation.  Similarly, the district court found that the other items (vehicle repair, landscaping, wireless radios, and the electronic gate) were properly offset as necessary costs for VPCF to "fulfill [its] obligations" under the Agreement—namely, to operate the vehicle storage facility.  As to both the declaration sought by IAL and VPCF's breach-of-contract counterclaim, the district court entered summary judgment in favor of IAL.  The district court determined that IAL owed VPCF $59,446.58. Accordingly, IAL effectively prevailed on both its complaint and VPCF's counterclaim against IAL.

## J.     IAL's Motion for Costs and Attorney's Fees

On May 30, 2017, IAL moved for costs and attorney's fees.  VPCF opposed the motion, arguing: (1) IAL was not the prevailing party; (2) the Agreement provided no basis for awarding fees; (3) IAL never tendered money to VPCF; and (4) IAL's requested fees were not specific enough.  The district court concluded that, under the terms of the Agreement, IAL was entitled to recover costs and attorney's fees in the amount of $79,412.40.

On July 18, 2017, the district court entered judgment in favor of IAL, declaring that IAL owed $59,446.58 to VPCF and awarding $79,412.40 in costs

14

and attorney's fees to IAL.  VPCF filed a timely notice of appeal, challenging the

district court's orders on summary judgment and costs and attorney's fees, as well

as its final judgment.

**K.    IAL's Motion to Amend the District Court's Judgment**

Thereafter, pursuant to Federal Rule of Civil Procedure 59(e) and O.C.G.A.

§ 9-13-75, IAL moved to alter or amend the district court's judgment by setting off

the competing awards for IAL's attorney's fees and the amount owed to VPCF,

which would result in a net judgment for IAL in the amount of $19,965.82.

In support of its motion, IAL stated that VPCF was indebted to the Internal

Revenue Service ("IRS") in the amount of $233,791.65 plus interest and that the

IRS had "already begun collection activities."  Under the district court's judgment,

IAL would be forced to pay VPCF $59,446.58 but would never see the award of

costs and attorney's fees of $79,412.40 in return.  In its opposition brief, VPCF

argued that IAL's citation to Georgia law on offsetting judgments was "not

persuasive" and that IAL's assertion that VPCF was in collections with the IRS

was unfounded.

The district court granted IAL's motion, subtracted the declaratory judgment

amount from the award of costs and attorney's fees, and amended the judgment to

reflect an award to IAL in the amount of $19,965.82.  VPCF filed an amended

15

notice of appeal, adding the district court's order on IAL's motion to amend the judgment and the district court's amended judgment.

## II.    DISCUSSION

On appeal, VPCF claims the district court erred on the following five issues: (1) determining that VPCF breached the Agreement; (2) finding that there were no disputed issues of material fact; (3) determining the amount that IAL owed VPCF; (4) awarding attorney's fees to IAL; and (5) amending its judgment to offset the awards between IAL and VPCF.  VPCF identifies these five issues but its brief on appeal discusses only the determination as to the amount owed to VPCF and the award of attorney's fees to IAL.  Therefore, we address only the two issues briefed by VPCF.[3]  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); Singh v. U.S. Att'y Gen., 561 F.3d 1275,

---

[3]It may be that VPCF focuses on these two issues because the other three so clearly lack merit.  For example, as to VPCF's breach of the Agreement, it is undisputed that VPCF violated federal law when it failed to pay its employees the required fringe benefits under the Service Contract Act, which constituted a breach of the Agreement between IAL and VPCF.  Likewise, VPCF failed to cure this mistake within the period provided in the Agreement.

In addition, the terms of the Agreement were clear and unambiguous, and the district court properly applied them to this dispute when it granted summary judgment in favor of IAL.  VPCF's brief fails to explain what factual determinations VPCF believes the district court improperly made.

Further, as to the competing awards, the district court did not err by offsetting these amounts in its amended judgment.  This practice is permitted under Georgia law, and VPCF provides no authority to the contrary.  See O.C.G.A. § 9-13-75 ("One judgment may be set off against another . . . .  The balance on the larger is collectable under execution.").

16

1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.").

## A.    Amount Owed to VPCF

This Court reviews de novo the district court's grant of summary judgment. Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016).  Likewise, we review de novo issues of contract interpretation.  Nat'l Fire Ins. Co. v. Fortune Constr. Co., 320 F.3d 1260, 1267 (11th Cir. 2003).

The Agreement between IAL and VPCF is governed by Georgia law.  Under Georgia law, contract construction begins with determining whether the contract's language is clear and unambiguous.  See City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d 381, 389 (Ga. 2013).  If it is, the court will simply enforce the contract according to its clear terms.  Id.  Unless otherwise noted, the words in a contract carry their ordinary meanings.  Atlanta Dev. Auth. v. Clark Atlanta Univ., Inc., 784 S.E.2d 353, 357 (Ga. 2016).  Here, we agree with the district court that the Agreement was clear and unambiguous.

Nonetheless, VPCF claims that the district court erred: (1) by utilizing the monthly per-vehicle rate listed in Exhibit B to the Agreement; and (2) by offsetting VPCF's compensation based on costs that VPCF was obligated to pay but that IAL paid on VPCF's behalf to perform under the Agreement.  Also, for the first time on

17

appeal, VPCF claims that IAL made these payments voluntarily and has surrendered its right to recover them under Georgia law.  See O.C.G.A. § 13-1-13.  We address only the arguments preserved on appeal, which excludes VPCF's argument about the voluntary payment defense.[4]  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1335 (11th Cir. 2004) (explaining that we need not address a claim "raised for the first time on appeal, without any special conditions").

The district court properly concluded that VPCF's compensation was based on the monthly per-vehicle rate listed in Exhibit B to the Agreement.  The Agreement stated that the "right to any reimbursement, payment or compensation of any kind from the other" would be governed by Exhibit B or by consent of the parties.  The rate schedule contained in Exhibit B demonstrated that the parties intended VPCF to receive compensation based on a monthly per-vehicle basis, not a fixed percentage of IAL's total revenue for vehicle storage under the GPC III Contract.[5]  As the district court properly found, the reference to a fixed percentage

---

[4]Even if we were to address VPCF's argument regarding the voluntary payment defense, it is without merit.  The Agreement explicitly stated that VPCF was financially responsible for all "necessary costs" to fulfill its obligations under the contract.  So, even if IAL initially paid these costs to ensure that VPCF could perform under the contract, the Agreement ultimately placed the responsibility for these costs on VPCF.  In any event, the voluntary payment defense does not apply to payments made "under an urgent and immediate necessity."  See O.C.G.A. § 13-1-13.

[5]Although not finalized when the Agreement was executed, the rate sheets were provided long before performance began.  Nothing in the record suggests that VPCF ever objected to the rate schedule, until this dispute arose.

18

in Exhibit B was "patently not a promise that VPCF would receive virtually all of IAL's government revenue."

We also agree with the district court's conclusion that IAL could properly offset costs paid on VPCF's behalf.  The Agreement contemplated that VPCF would "[p]erform the necessary functions to establish, staff and operate" a vehicle-storage facility.  In staffing and operating a storage facility, VPCF was expected to "bear all costs, expenses, risks and liabilities incurred by it arising out of or relating to its obligations, efforts or performance."  Equally, Exhibit A to the Agreement stated that VPCF would take on "[a]ll necessary cost to fulfill [its] obligations."  This same idea was reflected in the rate schedule contained in Exhibit B.

The monthly per-vehicle rate for VPCF was based on VPCF's expected costs, some of which VPCF did not pay.  Instead, IAL paid these costs to protect its own interest in VPCF's continued performance under the GPC III Contract.  IAL paid VPCF's vendors to satisfy debts that VPCF had incurred in connection with its performance under the Agreement so that VPCF could continue to operate the Chester Facility.  Consistent with the Agreement, IAL offset these costs against VPCF's compensation, which accounted for these costs being paid by VPCF.  Under these facts, the district court did not err by offsetting the costs that IAL paid

19

on VPCF's behalf or by finding that such an offset was supported by the terms of the Agreement.  We now turn to the issue of attorney's fees.

## B.    Award of Attorney's Fees to IAL

The trial court's award of attorney's fees is reviewed under the abuse of discretion standard.  Perez v. Wells Fargo N.A., 774 F.3d 1329, 1342 (11th Cir. 2014).  Under Federal Rule of Civil Procedure 54, "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  FED. R. CIV. P. 54(d)(2)(A).

VPCF argues that IAL was not entitled to attorney's fees under the Agreement because IAL did not obtain injunctive relief against VPCF.  VPCF also argues that IAL's request for attorney's fees was not supported by competent evidence and that IAL is entitled to only partial fees because it did not prevail on all of its claims.  See Krayev v. Johnson, 757 S.E.2d 872, 879–80 (Ga. App. Ct. 2014) (noting general rule that fees must be apportioned to claims on which the plaintiff prevailed).  For the reasons that follow, we disagree with both of these contentions.

First, while it is true that IAL later withdrew its tort claims against VPCF and did not ultimately obtain injunctive relief against VPCF, nothing in the Agreement required that IAL obtain injunctive relief in order to recover costs and

20

attorney's fees.  The Agreement provided that (1) "[i]n <u>any action initiated</u> by either party" for injunctive relief (2) the "prevailing party" was entitled to recover its expenses, including reasonable attorney's fees.  The district court aptly concluded that IAL was entitled to attorney's fees by explaining as follows:

> Section 26's two requirements [for attorney's fees], initiation and prevailing, are independent of each other. The last paragraph refers to "any action."  That means the parties intended for it to apply to a broader suit that grew out of an effort to seek injunctive relief—like this one.  Further, the paragraph refers to any action "initiated" under section 26, rather than limiting fees to an action resulting in relief mentioned therein.  The paragraph also uses the term "prevailing party," without qualification. <u>Id.</u> Had the parties meant to narrow this to a party who received injunctive relief against the other, they could have said so.  Turning from text to context, the last paragraph is physically separate from the third.  Under section 26, then, seeking injunctive relief under the third paragraph opened the door to a broader case, the prevailing party of which was authorized by the last paragraph to seek costs and fees.  The subcontract lets IAL recover fees here.

Second, the district court was not required to reduce IAL's attorney's fees on account of IAL's withdrawn tort claims against VPCF.  IAL obtained substantial relief in this case.  <u>See also</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 440, 103 S. Ct. 1933, 1943 (1983) ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.").  IAL obtained a declaratory judgment stating that IAL owed VPCF only $59,446.58 and summary judgment on VPCF's counterclaim that IAL owed over $2,000,000.00 under the

Agreement.  IAL also obtained a permanent injunction against both Brett Harris and Brett Harris Consulting for claims related to VPCF's payment dispute under the Agreement.  See Krayev, 757 S.E.2d at 880 (noting exception to successful-claim fee apportionment where the "claims are so similar that it would be too difficult to separate the hours spent on each").  A fee reduction was not warranted on these facts.

Additionally, we find no deficiency in the evidence supporting IAL's request for attorney's fees.  Based on the affidavits and invoices submitted by IAL, the district court did not abuse its discretion by awarding IAL $79,412.40 in costs and attorney's fees.

## III.   CONCLUSION

For all of these reasons, we affirm the orders and final judgment of the district court.

**AFFIRMED.**